EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
v.
UNIVERSITY OF PENNSYLVANIA.

Appeal of The TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA.

No. 87–1547.

United States Court of Appeals, Third Circuit.

Argued Feb. 25, 1988.

Decided June 23, 1988.

Rehearing and Rehearing In Banc Denied Aug. 26, 1988.

---

the court which first has possession of the subject must decide it." *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir.1941) (quoting *Smith v. McIver*, 22 U.S. (9 Wheat.) 532, 6 L.Ed. 152 (1824)), *cert. denied*, 315 U.S. 813, 62 S.Ct. 798, 86 L.Ed. 1211 (1942). Since then, this policy of comity has served to counsel trial judges to exercise their discretion by enjoining the subsequent prosecution of "similar cases ... in different federal district courts." *See generally Compagnie Des Bauxites De Guinea v. Insurance Co. of North America*, 651 F.2d 877, 887 n. 10 (3d Cir. 1981), *cert. denied*, 457 U.S. 1105, 102 S.Ct. 2902, 73 L.Ed. 1312 (1982); *see also Berkshire Intern. Corp. v. Marquez*, 69 F.R.D. 583, 586 (E.D.Pa.1976) ("it has long been the policy of our Circuit Court that absent unusual circumstances" the first-filed rule applies in cases of concurrent federal jurisdiction); *accord West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728 (5th Cir.1985) ("federal courts have long recognized that ... comity requires federal district courts ... to exercise care to avoid interference with each other's affairs.").

This appeal requires us to revisit the first-filed rule. We must determine whether the rule bars a district judge in the Eastern District of Pennsylvania from enforcing a subpoena issued by the Equal Employment Opportunity Commission ("EEOC") to an employer, the University of Pennsylvania ("the University"), which has already filed in the district court for the District of Columbia a constitutional challenge to the national policy authorizing the EEOC subpoena. The University contends that the district judge in the Eastern District of Pennsylvania abused his discretion by declining to dismiss the EEOC's enforcement suit in favor of the University's earlier constitutional challenge.

█ The first-filed rule encourages sound judicial administration and promotes comity among federal courts of equal rank. It gives a court "the power" to enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court.

Steven B. Feirson (argued), Alan D. Berkowitz, Dechert, Price & Rhoads, Philadelphia, Pa., for appellant.

Lamont N. White (argued), Appellate Div.–Office of General Counsel E.E.O.C., Washington, D.C., for appellee.

Before BECKER, HUTCHINSON and SCIRICA, Circuit Judges.

## OPINION OF THE COURT

SCIRICA, Circuit Judge.

Nearly fifty years ago, this court adopted what has become known as the "first-filed" rule. We concluded that "[i]n all cases of federal concurrent jurisdiction,

*See Triangle Conduit & Cable Co. v. National Elec. Products Corp.,* 125 F.2d 1008, 1009 (3d Cir.), *cert. denied,* 316 U.S. 676, 62 S.Ct. 1046, 86 L.Ed. 1750 (1942). That authority, however, is not a mandate directing wooden application of the rule without regard to rare or extraordinary circumstances, inequitable conduct, bad faith, or forum shopping. District courts have always had discretion to retain jurisdiction given appropriate circumstances justifying departure from the first-filed rule. *See Crosley Corp. v. Westinghouse Elec. & Mfg. Co.,* 130 F.2d 474, 475–76 (3d Cir.), *cert. denied,* 317 U.S. 681, 63 S.Ct. 202, 87 L.Ed. 546 (1942); *accord Pacesetter Systems, Inc. v. Medtronic, Inc.,* 678 F.2d 93, 95 (9th Cir.1982); *Mattel, Inc. v. Louis Marx & Co.,* 353 F.2d 421, 423–24 & n. 4 (2d Cir.1965); *cf. Colorado River Water Conserv. Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976) (no precise rule governs relations between federal district courts possessing jurisdiction, but general principle is to avoid duplicative litigation); *Kline v. Burke Constr. Co.,* 260 U.S. 226, 229, 43 S.Ct. 79, 81, 67 L.Ed. 226 (1922) (forbearance exercised by coordinate federal courts is discretionary) (quoting *Covell v. Heyman,* 111 U.S. 176, 182, 4 S.Ct. 355, 358, 28 L.Ed. 390 (1884)).

Therefore, we review the district court's order for abuse of discretion. *Crosley,* 122 F.2d at 927; *see also United States v. Criden,* 648 F.2d 814, 817 (3d Cir.1981); *Pacesetter Systems,* 678 F.2d at 95 & n. 1. We hold that the district court did not abuse its discretion by declining to invoke the first-filed rule to dismiss the EEOC's enforcement action. When the University filed the first suit in the District of Columbia Circuit, it knew the EEOC's enforcement action in the Eastern District of Pennsylvania was imminent, and that precedent in this Circuit, *see E.E.O.C. v. Franklin & Marshall College,* 775 F.2d 110 (3d Cir.1985), *cert. denied,* 476 U.S. 1163, 106 S.Ct. 2288, 90 L.Ed.2d 729 (1986), might favor resolution of the dispute in favor of the EEOC. Under these circumstances, and in light of the purposes of Title VII of the Civil Rights Act of 1964,

the first-filed rule does not govern this case.

In addition, we will affirm, for reasons other than those stated by the district court, the order denying the University's request to raise its defenses at the subpoena enforcement stage. We will remand, however, on the issue whether the University should be entitled to produce redacted records.

## I. Facts and Proceedings

The facts are undisputed. In 1985, the University denied tenure to Rosalie Tung, a junior member of the faculty of the University's Wharton School. Tung then filed charges with the EEOC, alleging that the denial was based on her race (Asian) and on her sex (female). As a result of the EEOC's investigation, the University supplied a wide range of documents, but declined to release confidential peer review materials relating to the tenure review process for Tung and the five other male candidates under consideration. The EEOC then issued a subpoena seeking:

1. Copies of Tung's tenure file;

2. Copies of the tenure file for the five other candidates considered with Tung for tenure;

3. The identity, tenure status, and qualifications of those individuals who comprised the tenure committees for the University's management department from June, 1984 to the present; and

4. The identity of all members of the University's personnel committee.

J.A. at 3 (EEOC subpoena).

The University requested the EEOC to balance its need for access to investigative materials with the University's "important societal and constitutional interests in preserving the integrity of the peer review process." J.A. at 9. This balancing, the University maintained, would require the EEOC to modify the subpoena to exclude confidential peer review material. *Id.* at 8–9. The EEOC denied this request on April 10, 1987, concluding that: (1) the peer review information was necessary to determine whether Tung was treated differently

from those who received tenure; and (2) this court's decision in *Franklin & Marshall* required it to reject the University's argument that principles of academic freedom created a qualified privilege protecting universities from disclosing tenure review information to the EEOC. J.A. at 11–14. The EEOC notified the University that unless it responded to the subpoena within twenty days of receiving the agency decision, subpoena enforcement proceedings would be initiated. *Id.* at 14.

The University received the EEOC decision on April 14, 1987; thus, the twenty-day grace period expired on May 4, 1987. On May 1, 1987—three days before expiration of the grace period—the University responded by filing suit for declaratory judgment and injunctive relief in the district court for the District of Columbia. The University claimed the EEOC had violated the first and fifth amendments, *see* U.S. Const. amend. I, V, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 553 (1982), by adopting a policy that, in practice, constituted a nationwide rule requiring complete disclosure of confidential peer review materials. *See* J.A. at 148, 153–54, 157.[1] Count IV of the University's complaint explicitly requested the court to quash the subpoena issued by the EEOC's Philadelphia office. *Id.* The University said it filed suit in Washington, D.C., rather than Philadelphia, because "more was at stake than the single question of the Commission's possible enforcement of the its subpoena against the University." Brief for Appellant at 6.

The EEOC instituted its subpoena enforcement action on June 19, 1987 in the Eastern District of Pennsylvania. At that point, therefore, each party had filed suit relating to the validity of the EEOC subpoena, but the suits were pending in different federal district courts. Citing our decision in *Crosley*, the University sought dismissal of the enforcement action in favor of its previously filed suit in the District of Columbia. In the event the action was not dismissed on comity grounds, the University requested an opportunity to raise its constitutional and APA defenses when the Eastern District of Pennsylvania court considered the subpoena enforcement question. It then sought discovery to support those claims. The EEOC opposed the discovery requests, arguing that the constitutional and APA issues could not be considered in the enforcement action.

The Eastern District of Pennsylvania judge heard oral argument July 2, 1987 on the University's motion to dismiss. *See* J.A. at 44–76 (transcript of oral argument). The trial judge posited that the University filed the first action in the District of Columbia to avoid an adverse decision in this circuit based on *Franklin & Marshall:*

> As I see it, ... we have ... a case on point ... and maybe you were looking somewhere else, that you thought might result in something different than they did ... in the Third Circuit. That is possible, isn't it? ... Isn't that why you did it?

J.A. at 55–56. The University's counsel responded that avoidance of *Franklin & Marshall* "may have been a consideration ... but we did not choose a forum that was inappropriate for the action that we brought." *Id.* at 56; *accord* Transcript of Oral Argument at 4, 5 (3d Cir. February 25, 1988). On September 1, 1987, the Eastern District of Pennsylvania judge denied the motion to dismiss, ordered the University

---

1. The University's APA claim is that the EEOC adopted a rule of "total and absolute disclosure by colleges and universities of all peer review materials used in making tenure decision." J.A. at 148, 154. The basis for the University's contention that an EEOC "rule" exists is the EEOC's April 10, 1987 refusal to modify the University's subpoena. In its complaint in the District of Columbia, the University alleged:

> In rendering its determination in plaintiff's petition to modify the subpoena, the EEOC made clear that it has rejected any balancing

approach and is seeking information through its subpoena policies without giving weight to the constitutional and societal interests which underlie the peer review process.

By taking the above action, defendant has affected important substantive rights and has violated the Administrative Procedure Act by engaging in rule making without complying with the advance publication and opportunity for public participation requirements of 5 U.S.C. Section 553.

*Id.* at 157–58 (Complaint ¶¶ 48, 49).

to comply with the subpoena within ten days, and denied the University's discovery requests.[2]

Meanwhile, the University's parallel suit in the District of Columbia continued to proceed in due course. On September 3, 1987, the District of Columbia judge denied the EEOC's motion to dismiss the University's complaint for lack of jurisdiction, improper venue, and failure to state a claim. Although the EEOC never filed a motion to transfer that action to the Eastern District of Pennsylvania, it did seek to stay the District of Columbia action pending resolution of this appeal. The University opposed the stay, arguing that even if we affirm the Eastern District of Pennsylvania judge's September 1 order, those proceedings have been so confined that they will not dispose of " 'all or a substantial portion of the subject matter pending before [the District of Columbia] court.' " Supp. J.A. at 360. The District of Columbia judge denied the stay.

## II. Discussion

■ The parties are now confronted with a situation in which the Eastern District of Pennsylvania judge has declined to dismiss the enforcement action in favor of the first-filed constitutional challenge, and the District of Columbia judge has declined to stay the constitutional challenge pending appeal of the second-filed enforcement action. The University observes that the present procedural posture could lead to the anomalous result of the District of Columbia judge declaring the EEOC subpoena policy unconstitutional or unenforceable, but this court nevertheless ordering it to comply with the Eastern District of Pennsylvania judge's order enforcing the subpoena.

To be sure, this is the type of situation that prompted the first-filed rule. "It is of obvious importance to all the litigants to have a single determination of their controversy, rather than several decisions which if they conflict may require separate appeals to different circuit courts of appeals." *Crosley,* 122 F.2d at 930. Comity must serve as a guide to courts of equal jurisdic-

tion to exercise forbearance to avert conflicts and to avoid "interference with the process of each other." *Kline,* 260 U.S. at 229, 43 S.Ct. at 81. The potential conflict, however, is of the University's own making. Indeed, it must have anticipated this problem when it decided to preempt an inevitable subpoena enforcement action by filing suit three days before expiration of the EEOC grace period in what it perceived as a more favorable forum. Resolution of this knotty issue of federal jurisprudence must begin with an examination of our decision in *Franklin & Marshall.*

### A. Franklin & Marshall

In *Franklin & Marshall,* this court was confronted with a district court's order enforcing an EEOC subpoena for confidential peer review records relating to a denial of tenure to a college instructor. 775 F.2d at 111. The appellant Franklin & Marshall College contended that the court should recognize a constitutionally based "qualified academic peer review privilege that would prevent disclosure of confidential peer review material absent a showing of an inference of discrimination." *Id.* at 113. We recognized that two other courts of appeals—the Second and Seventh Circuits—had adopted either the privilege or a balancing approach. *Id.* (citing *E.E.O.C. v. University of Notre Dame,* 715 F.2d 331, 337–38 (7th Cir.1983) (qualified privilege); *Gray v. Board of Higher Educ. City of New York,* 692 F.2d 901, 904–05 (2d Cir. 1982) (balancing test)). Moreover, we acknowledged that the EEOC's position would burden the tenure review process and would impact on academic freedom, which is "a special concern of the First Amendment." *Franklin & Marshall,* 775 F.2d at 114, 115 (citing *Regents of the Univ. of Cal. v. Bakke,* 438 U.S. 265, 312, 98 S.Ct. 2733, 2759, 57 L.Ed.2d 750 (1978)).

Nevertheless, we declined to create a similar exception for academic institutions, concluding that Congress delivered a "clear mandate" subjecting academic institutions to the express requirements of Title VII. *Franklin & Marshall,* 775 F.2d at 114, 115

---

**2.** This court grant a stay on October 16, 1986, pending appeal of the district court's order.

(examining legislative history of Title VII). Congress, we noted, had "identified and recognized the threat of unchecked discrimination in education...." *Id.* at 115. Adoption of a qualified privilege or balancing test would permit universities to avoid EEOC investigation and allow them "to hide evidence of discrimination behind a wall of secrecy." *Id.*

Moreover, we explained why the confidential peer review records are relevant to an investigation of discrimination in the tenure context:

> [A]n alleged perpetrator of discrimination cannot be allowed to pick and choose the evidence which may be necessary for an agency investigation. There may be evidence of discriminatory intent and of pretext in the confidential notes and memorandum which the appellant seeks to protect. Likewise, confidential material pertaining to other candidates for tenure in a similar time frame may demonstrate that persons with lesser qualifications were granted tenure or that some pattern of discrimination appears.... [T]he peer review material itself must be investigated to determine whether the evaluations are based in discrimination and whether they are reflected in the tenure decision.

*Id.* at 116 (footnotes and citations omitted). Thus, in *Franklin & Marshall*, this court expressly declined to limit the EEOC's subpoena authority to accommodate an academic institution's constitutional right to academic freedom. The University contends that *Franklin & Marshall* did not, however, consider the precise claims alleged by the University in this case; *i.e.*, that the EEOC has instituted a subpoena policy in violation of the APA, and that the EEOC acted in an unconstitutional manner by refusing, as a matter of national agency policy, to recognize the special status of academic institutions.

### B. The University's Claim

Our holding in *Franklin & Marshall* apparently prompted the University to initiate its constitutional challenge in a more friendly forum. *See* J.A. at 56 (transcript of oral argument in the Eastern District of Pennsylvania); *see also* Part I, *supra.* Indeed, although the District of Columbia Circuit has not addressed the issue of academic freedom and EEOC subpoenas, the University perceives the District of Columbia Circuit as favoring its position. *See* J.A. at 291, 361 (citing *Greenya v. George Washington Univ.*, 512 F.2d 556, 563 (D.C. Cir.), *cert. denied*, 423 U.S. 995, 96 S.Ct. 422, 46 L.Ed.2d 369 (1975)). That fact, however, is not dispositive.

As the University points out, it was legally entitled to file suit in the District of Columbia. Moreover, venue provisions for suits contesting administrative action generally create the availability of multiple forums. R. Pierce, S. Shapiro & P. Verkuil, *Administrative Law & Process* § 5.6, at 175–76 (1985); *see also* McGarity, *Multi-Party Forum Shopping for Appellate Review of Administrative Action*, 129 U.Pa. L.Rev. 302, 304 (1980) ("venue provisions of individual agency statutes commonly allow for review in several possible circuits.")

The University contends that its suit was properly filed pursuant to 28 U.S.C. § 1391(e). That provision provides that "[a] civil action in which a defendant is ... an agency of the United States ... may, except as otherwise provided by law, be brought in any judicial district in which (1) a defendant in the actions resides, or (2) the cause of action arose...." *Id.* Because the EEOC's headquarters is in Washington, D.C., *see* 42 U.S.C. § 2000e–4(f), the University maintains that it properly instituted suit on the subpoena policy in the District of Columbia. Moreover, it notes, Washington, D.C. is where the EEOC's rule was promulgated and where the documents and other discovery relevant to the University's claim is located. The University contends that by refusing to dismiss the second-filed suit based on notions of comity, the Eastern District of Pennsylvania judge abused his discretion.

The EEOC, meanwhile, contends that the first-filed suit in the District of Columbia was "an obvious attempt to preempt the filing of a Commission subpoena enforcement action in the Eastern District of Pennsylvania and to evade unfavorable

controlling Third Circuit precedent.... The University seeks to reap the benefits of its unabashed forum-shopping by arguing that concerns of 'comity' required dismissal of the EEOC's suit." Brief of EEOC as Appellee, at 10.

By maintaining it was entitled to file in the District of Columbia district court, the University misses the point. We do not dispute that under most circumstances, the District of Columbia suit was properly filed; *i.e.*, venue and jurisdiction were proper.[3] *See* 28 U.S.C. § 1391(e). For that matter, the EEOC's Eastern District of Pennsylvania subpoena action was also properly filed. Indeed, Title VII arguably contemplates the Eastern District of Pennsylvania as the more appropriate forum— at least for Count IV (motion to quash the EEOC subpoena) of the University's complaint. Title VII provides:

[Actions brought under this subchapter] may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office....

42 U.S.C. § 2000e–5(f)(3).

Thus, at least with respect to the allegation concerning the subpoena, which sought records relevant to an alleged violation in Philadelphia (Count IV), that action, standing alone, would be more properly brought in the Eastern District of Pennsylvania. These jurisdictional guideposts,

however, fail to resolve the difficult issue of federal comity. Although a portion of the District of Columbia action presents the identical issue raised in the Eastern District of Pennsylvania action, both actions were properly filed.[4] The dispositive issue, therefore, is whether Eastern District of Pennsylvania judge abused his discretion by refusing to dismiss the second-filed suit in favor of the first-filed District of Columbia action.

The University asserts that the district court must always exercise its discretion by dismissing the second-filed action. Under the University's view, the first-filed rule is a firm legal principle requiring dismissal of the second-filed suit without regard to the circumstances of the case. We disagree.

Although exceptions to the rule are rare, courts have consistently recognized that the first-filed rule "is not a rigid or inflexible rule to be mechanically applied...." *Pacesetter Systems,* 678 F.2d at 95; *accord Orthmann v. Apple River Campground,* 765 F.2d 119, 121 (8th Cir.1985). Bad faith, *see Crosley Corp.,* 130 F.2d at 476; *Berkshire,* 69 F.R.D. at 588, and forum shopping have always been regarded as proper bases for departing from the rule. *See Mattel, Inc.,* 353 F.2d at 424 n. 4 (citing *Rayco Mfg. Co. v. Chicopee Mfg. Co.,* 148 F.Supp. 588, 592–94 (S.D.N.Y.1957)); *Berkshire,* 69 F.R.D. at 588. Similarly, courts have rejected the rule when the second-filed action had developed further than the initial suit, *see Orthmann,* 765 F.2d at 121; *Church of Scientology v. United States Dept. of Army,* 611 F.2d 738, 749–50 (9th Cir.1979), and when the first-filing party instituted suit in one forum in anticipation of the opposing party's imminent suit in another, less favorable, forum. *Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215,

---

**3.** The District of Columbia judge so held. *See* J.A. at 347 (denying the EEOC's motion to dismiss the District of Columbia suit).

**4.** We are puzzled by the EEOC's failure to move to transfer, *see* 28 U.S.C. § 1404 (1982), or stay the District of Columbia proceeding in favor of the Eastern District of Pennsylvania suit. *See generally West Gulf Maritime Ass'n v. ILA Deep Sea Local 24,* 751 F.2d 721, 724, 729 n. 1 (5th

Cir.1985) ("In addition to outright dismissal, it sometimes may be appropriate to transfer the action or to stay it."). Although a transfer or stay would have avoided this jurisdictional dispute, a remand to address these issues would serve no purpose here given the procedural stage of the District of Columbia suit, and the additional delay it would impose on the resolution of Ms. Tung's Title VII charge.

217, 219 (2d Cir.1978), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979); *see also Ven–Fuel, Inc. v. Department of the Treasury,* 673 F.2d 1194, 1195 (11th Cir.1982) (first filing not controlling when it was made "in apparent anticipation of imminent judicial proceedings" by opposing party); *Yoder v. Heinold Commodities, Inc.,* 630 F.Supp. 756, 760, 761 (E.D. Va.1986) ("foremost among [the] equitable considerations are the timing and circumstances surrounding the filing of" the first suit); *Consolidated Rail Corp. v. Grand Trunk Western Railroad Co.,* 592 F.Supp. 562, 568, 569 (E.D.Pa.1984).

The letter and spirit of the first-filed rule, therefore, are grounded on equitable principles. *See Columbia Plaza Corp. v. Security Nat. Bank,* 525 F.2d 620, 621 (D.C.Cir.1975); *cf. Kerotest Mfg. Co. v. C–O–Two Co.,* 342 U.S. 180, 183–84, 72 S.Ct. 219, 221–22, 96 L.Ed. 200 (1952) (under Federal Declaratory Judgments Act, factors relevant to wise judicial administration between coordinate federal courts "are equitable in nature"). To be sure, the rule's primary purpose is to avoid burdening the federal judiciary and to prevent the judicial embarrassment of conflicting judgments. *Church of Scientology,* 611 F.2d at 750; *Crosley Corp.,* 122 F.2d at 930. Yet, fundamental fairness dictates the need for "fashioning a flexible response to the issue of concurrent jurisdiction." *Church of Scientology,* 611 F.2d at 750.

In exercising his discretion, the trial judge was bound to acknowledge these principles. "The term 'discretion' denotes the absence of a hard and fast rule." *Langnes v. Green,* 282 U.S. 531, 541, 51 S.Ct. 243, 247, 75 L.Ed. 520 (1931) (citing *The Styria v. Morgan,* 186 U.S. 1, 9, 22 S.Ct. 731, 734, 46 L.Ed. 1027 (1902)); *Cri-*

*den,* 648 F.2d at 817 ("discretion of the trial court . . . means merely that the decision is uncontrolled by fixed principles or rules of law."). Under this standard, a court must act "with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result." *Langnes,* 282 U.S. at 541, 51 S.Ct. at 247. The decision to exercise jurisdiction in this context requires the trial judge to possess "the flexibility necessary to fit the decision to the individualized circumstances." *Criden,* 648 F.2d at 818.

The University contends that the record is devoid of any evidence of bad faith with respect to its decision to file suit in the District of Columbia. It notes that the district court's order includes no such finding,[5] and that venue was proper in the District of Columbia.

Nevertheless, viewing the totality of the circumstances, the district court did not abuse its discretion by declining to dismiss the second-filed suit. The timing of the University's filing in the District of Columbia indicates an attempt to preempt an imminent subpoena enforcement in the Eastern District of Pennsylvania. When it denied the University's request to modify the subpoena based on first amendment considerations, the EEOC threatened to institute a subpoena enforcement proceeding within twenty days unless the University responded. Instead of complying with the ruling or notifying the EEOC of its intent to contest the ruling, the University filed suit in the District of Columbia three days before the expiration of the grace period during which the EEOC stated it would not resort to a judicial enforcement proceeding.[6]

---

**5.** A written statement setting forth reasons for the trial court's exercise of discretion: (1) helps appellate courts determine that relevant factors were considered and given appropriate weight; and (2) discourages reversal on the ground that appellate judges might have decided differently had they been the original decisionmakers. *United States v. Criden,* 648 F.2d 814, 819 (3d Cir.1981).

For purposes of this appeal, however, the district court record—particularly the oral argu-

ment transcript—provides an adequate means of discerning the factors and reasons underlying the district court's ruling. *See Adams v. Gould, Inc.,* 739 F.2d 858, 863 (3d Cir.1984), *cert. denied,* 469 U.S. 1122, 105 S.Ct. 806, 83 L.Ed.2d 799 (1985).

**6.** J.A. at 14. Title VII includes no time limit within which parties must respond to agency subpoenas. The EEOC grants issuing officials discretion in granting extensions to permit sub-

Moreover, the University has acknowledged that our decision in *Franklin & Marshall* presented a problem with respect to its plan to contest the EEOC's refusal to modify the subpoena to recognize first amendment considerations of academic freedom. Even if this factor, standing alone, were insufficient to justify departure from the first filed rule, when viewed through the factual prism of this proceeding, the University's effort to evade a decision in this Circuit violates the equitable basis for the rule, and creates several problems that cannot be ignored.

If, as the University believes, the District of Columbia Circuit will refuse to enforce subpoenas demanding peer review records, litigants from throughout the country will avoid local enforcement actions by first obtaining a favorable ruling in the District of Columbia. This would undermine our precedent[7] and "improperly 'subordinate a regional circuit,'" *see Chabal v. Reagan,* 822 F.2d 349, 355 (3d Cir.1987), by establishing the District of Columbia as a super court of appeals. There is no indication that Congress intended the District of Columbia courts to play such a pivotal role in Title VII enforcement. When Congress intends a court of appeals to possess such authority, it explicitly so provides. *See, e.g.* 29 U.S.C. § 160(f) (1982) (final orders of National Labor Relations Board may be reviewed by any court of appeals where unfair labor practices occurred, or where the aggrieved party resides or transacts business, or in the District of Columbia Circuit); 28 U.S.C. § 1295(a)(1) (1982) (Federal Circuit has exclusive jurisdiction over appeals of patent and trademark cases)

■ Although the University characterizes its District of Columbia filing as a broad first amendment challenge to the EEOC's national policy, its complaint, *see* Count IV, features a direct challenge to the EEOC subpoena: (1) issued in Philadelphia; (2) for records held by the University; and (3) relating to a discrimination charge aris-

ing at the University. The University's conduct following the issuance of the EEOC's subpoena, therefore, created "a lamentable spectacle," which was "tantamount to the blowing of a starter's whistle in a foot race." *See Rayco,* 148 F.Supp. at 592; *accord Tempco Elec. Heater Corp. v. Omega Engineering,* 819 F.2d 746, 750 (7th Cir.1987) (rigid first-filed rule "will encourage an unseemly race to the courthouse and, quite likely, numerous unnecessary suits."); [*Consol. Rail Corp. v.*] *Grand Trunk,* 592 F.Supp. [562] at 568–69 [ (E.Pa.1984) ]. Because the first-filed rule is based on principles of comity and equity, it should not apply when at least one of the filing party's motives is to circumvent local law and preempt an imminent subpoena enforcement action.

Our holding is further supported by two themes emphasized by Congress when it enacted Title VII. First, Title VII requires the prompt resolution of claims. It establishes strict time limits on the processing of charges, the assignment of district judges to hear cases, and the scheduling of district court hearings "at the earliest practicable date." *See* 42 U.S.C. §§ 2000e–5(f)(1)–(5). District judges are duty-bound "to cause the case to be in every way expedited." *Id.* § 2000e–5(f)(5). The EEOC's subpoena power, *see id.* § 2000e–9, enables it to fulfill its investigative role and obtain information needed to determine whether there is reasonable cause to believe a charge is true. *See EEOC v. Associated Dry Goods Corp.,* 449 U.S. 590, 595, 596, 101 S.Ct. 817, 820, 821, 66 L.Ed.2d 762 (1981). Upholding the University's first-filed suit in this context would undermine the congressional policy favoring prompt resolution of discrimination claims.

Second, the EEOC is charged with a duty to resolve discrimination disputes by conciliation. *See* 42 U.S.C. § 2000e–5(b) ("the Commission shall endeavor to eliminate any such alleged unlawful employment practice

---

poena compliance. *See* J.A. at 132 (EEOC Compliance Manual § 24.5(a)).

7. "Adherence to precedent must ... be the rule rather than the exception if litigants are to have

faith in the even-handed administration of justice in the courts." B. Cardozo, *The Nature of the Judicial Process* 34 (1921).

by informal methods of conference, conciliation, and persuasion"); *EEOC v. Associated Dry Goods Corp.*, 449 U.S. at 595 & n. 5, 101 S.Ct. at 820 & n. 5. Upholding the University's action in this case would undermine this congressional goal. For example, instead of attempting to resolve a dispute in good faith, the EEOC and an employer in this Circuit would engage in pro forma discussions with an eye toward winning the race to the courthouse in the most favorable forum.

■ The purposes of Title VII, along with this Court's precedent and the principles underlying the first-filed rule, are better served by rejecting the University's effort to dismiss the second-filed suit. We emphasize, however, that invocation of the rule will usually be the norm, not the exception. Courts must be presented with exceptional circumstances before exercising their discretion to depart from the first-filed rule. The district court properly relied on such circumstances here. Accordingly, we will affirm the district court's decision to deny the University's motion to dismiss.

### C. The University's Constitutional and APA Defense

Resolution of the first-filed rule issue, however, does not end our inquiry. The University contends that by upholding all aspects of the district court's order, we would be forcing the University to litigate the subpoena enforcement issue without an opportunity to raise possible constitutional and APA defenses. The EEOC, meanwhile, has consistently maintained that the University's defenses cannot be raised in a summary subpoena enforcement action. It contends that courts should not permit a party to use dilatory discovery tactics to delay subpoena enforcement actions. Brief of EEOC as Appellee at 21 (citing *In re EEOC*, 709 F.2d 392, 400 (5th Cir.1983)). In addition, the EEOC notes, as it did before the district court, that the University's constitutional and APA defenses are already before the District of Columbia court. Thus, the EEOC maintains, when deciding a subpoena enforcement action,

the court must simply determine whether the information is relevant. The Eastern District of Pennsylvania judge agreed.

When the University sought discovery to support its first amendment and APA defenses, the district court denied the request, observing that the "asserted defenses ... are an improper response to an application to enforce an administrative subpoena." J.A. at 144 (order of Sept. 1, 1987). The court then denied the University's motion to dismiss and ordered the University to comply with the subpoena. *Id.* at 145.

We do not dispute the proposition that dilatory discovery tactics must not be interposed to delay a subpoena enforcement action. The district court, however, did not base its decision on this ground, and the EEOC made no showing to support such an assertion. Instead, the court concluded that the first amendment and APA defenses were improper responses to the enforcement action. In effect, the court determined, as long as the subpoena sought relevant information, it must be enforced. Because this portion of the court's order rested on the application of legal principles, our review is plenary. *In re Remington Rand Corp.*, 836 F.2d 825, 828 (3d Cir. 1988); *Adams v. Gould, Inc.*, 739 F.2d 858, 864 (3d Cir.1984), *cert. denied*, 469 U.S. 1122, 105 S.Ct. 806, 83 L.Ed.2d 799 (1985).

To be sure, relevancy is the touchstone of any discovery request. *See* Fed.R.Civ.P. 26(b); 8 C. Wright & A. Miller, *Federal Practice & Procedure* § 2008, at 41 (1970) ("Perhaps the single most important word in Rule 26(b) is 'relevant' for it is only relevant matter that may be subject to discovery."). Yet this does not mean courts must ignore possible constitutional violations that would render the subpoena invalid.

Here, the district court did not rely on *Franklin & Marshall* when it barred the University from defending the subpoena enforcement action. Instead, it concluded that constitutional issues in general could not be considered, and denied the University's request for discovery on that issue. *See* J.A. at 144 (order of Sept. 1, 1987)

**980**

(constitutional and APA defenses "are an improper response to an application to enforce an administrative subpoena.") We will affirm the district court's order, but on different grounds.

■ Even when a subpoena is authorized by statute and relevant to the agency's investigative mission, "different considerations come into play when a case ... implicates first amendment concerns.... [P]rotection of the constitutional liberties of the target of the subpoena calls for a more exacting scrutiny...." *Federal Election Comm'n v. Larouche Campaign,* 817 F.2d 233, 234 (2d Cir.1987) (per curiam) (citing *Federal Election Comm'n v. Machinists Non–Partisan Political League,* 655 F.2d 380, 386–88 (D.C.Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 397, 70 L.Ed.2d 213 (1981)); *cf. NAACP v. Alabama,* 357 U.S. 449, 462, 78 S.Ct. 1163, 1171, 2 L.Ed.2d 1488 (1958) (production order may be challenged as violation of first amendment); *Local 1814, Intern. Longshoremen's Ass'n v. Waterfront Comm'n,* 667 F.2d 267, 270, 271 (2d Cir.1981) (government attempts to compel disclosure subject to exacting scrutiny in first amendment context). Indeed, the first amendment issue decided in *Franklin & Marshall* arose in the form of a defense to an agency's subpoena enforcement action. *Franklin & Marshall,* 775 F.2d at 111. Thus, when a nonfrivolous first amendment concern is raised, an agency "is not automatically entitled to obtain all material that may in some way be relevant to a proper investigation." *Federal Election Comm'n v. LaRouche Campaign,* 817 F.2d at 234; *accord United States v. Citizens State Bank,* 612 F.2d 1091, 1093 (8th Cir.1980).

■ As a matter of law, therefore, the University was entitled to assert the first amendment as a defense to the compelled production of private peer review materials. We need not remand, however, to the district court for consideration of the first amendment defense. Although the University characterizes its first amendment attack as a challenge to a national EEOC policy, its allegation raises essentially the same question decided in *Franklin & Marshall.* Under these circumstances, therefore, remand would serve no purpose. The district court, like this panel, lacks authority to overrule an opinion of a previous panel. *See Poulis v. State Farm Fire and Cas. Co.,* 747 F.2d 863, 867 (3d Cir.1984) (quoting Internal Operating Procedures of the Court of Appeals for the Third Circuit, Chapter 8.C).

We must employ a different analysis, however, with respect to the University's claim that it should have been entitled to raise its APA claim as a defense to the subpoena enforcement action.[8] Aside from contentions raising first amendment issues, *see supra,* or abuse of process concerns, *see SEC v. Wheeling–Pittsburgh Steel Corp.,* 648 F.2d 118, 125 (3d Cir.1981) (en banc), the role of the court in a subpoena enforcement proceeding is "sharply limited." *See EEOC v. Tempel Steel Co.,* 814 F.2d 482, 485 (7th Cir.1987) (quoting *EEOC v. South Carolina Nat'l Bank,* 562 F.2d 329, 332 (4th Cir.1977)).

■ Courts must refrain from allowing the subpoena enforcement proceeding to develop into a full-blown trial of the underlying claim. "If every possible defense, procedural or substantive, were litigated at the subpoena enforcement stage, administrative investigations obviously would be subjected to great delay." *EEOC v. Tempel Steel Co.,* 814 F.2d at 485. As we observed earlier, delay at the EEOC's investigative stage contravenes the express intent of Congress. Nevertheless, courts

---

**8.** There is some question whether the University raised its APA defense before the district court. *See* Brief of EEOC as Appellee at 19. As we read the allegation, however, the EEOC does not contend that the APA issue was not properly presented for consideration by the Eastern District of Pennsylvania judge. Instead, it argues that the University informed the Eastern District of Pennsylvania judge that the APA and constitutional issues were pending only in the District of Columbia court.

Our reading of the record establishes that both issues were raised in the district court. Moreover, the order from the Eastern District of Pennsylvania judge indicates that the court perceived the APA and constitutional issues as having been properly raised.

are not required to enforce every agency subpoena. The subpoena must be issued pursuant to an investigation within the agency's authority, *see e.g., EEOC v. Shell Oil Co.,* 466 U.S. 54, 82, 104 S.Ct. 1621, 1638, 80 L.Ed.2d 41 (1984) (agency seeking subpoena enforcement must comply with "the strictures embodied in Title VII")[9]; it must be definite; and it must seek information relevant to the charge under investigation. *Id.* at 72 & n. 26, 104 S.Ct. at 1632 & n. 26; *United States v. Powell,* 379 U.S. 48, 57, 58, 85 S.Ct. 248, 254, 255, 13 L.Ed.2d 112 (1964); *Endicott Johnson Co. v. Perkins,* 317 U.S. 501, 509, 63 S.Ct. 339, 343, 87 L.Ed. 424 (1943); *EEOC v. University of Pittsburgh,* 643 F.2d 983, 985 (3d Cir.), *cert. denied,* 454 U.S. 880, 102 S.Ct. 362, 70 L.Ed.2d 190 (1981).

■■■ The University raised none of these objections. Instead, it attempted to block the subpoena by alleging that the EEOC's refusal to modify its subpoena was governed by a national policy requiring full disclosure of academic peer review materials. Adoption of this policy, the University contends, constituted agency rulemaking in violation of the APA, 5 U.S.C. § 553(b). *See generally supra* note 1. We recognize, or course, that an agency rule that violates the APA may not be afforded the "force and effect of law." *See Chrysler Corp. v. Brown,* 441 U.S. 281, 313, 99 S.Ct. 1705, 1723, 60 L.Ed.2d 208 (1979). The EEOC, however, contends that it need not comply with APA rulemaking when issuing investigative subpoenas in individual cases. Under its view, the determination of how an agency conducts its investigation is exempt from the notice and comment requirement because it is an interpretative rule, a general statement of policy, or a rule of agency organization, procedure or practice. *See* 5 U.S.C. § 553(b)(3)(A).

The district court declined to address these APA issues at the subpoena enforce-

ment stage. We find no error in this determination.

Even if the University were permitted to raise its APA defense, and establish that the EEOC rule was invalid, the University has not established how the EEOC could be prevented from enforcing a particular subpoena. Pursuant to an express congressional grant of authority, the EEOC is empowered to subpoena records relating to a charge of discrimination. 42 U.S.C. § 2000e–8(a) (authority to inspect and copy evidence relevant to a charge under investigation); *id.* § 2000e–9 (authority to issue administrative subpoenas and seek judicial enforcement); *see generally EEOC v. Shell Oil Co.,* 466 U.S. at 63, 104 S.Ct. at 1628; *EEOC v. Associated Dry Goods Corp.,* 449 U.S. 590, 596, 101 S.Ct. 817, 821, 66 L.Ed.2d 762 (1981); *EEOC v. University of Pittsburgh,* 643 F.2d 983, 986 (3d Cir.), *cert. denied,* 454 U.S. 880, 102 S.Ct. 362, 70 L.Ed.2d 190 (1981). Invalidation of an alleged EEOC subpoena "rule" in an enforcement proceeding would not overrule the EEOC's statutory grant of investigative subpoena power in individual cases. Thus, regardless of the APA, the EEOC maintains its ability to justify a subpoena in a particular case. *See* 42 U.S.C. §§ 2000e–8(a), 2000e–9. We agree with the district court that the EEOC has done so here. Indeed, our decision in *Franklin & Marshall* upheld enforcement of an EEOC subpoena under nearly identical circumstances. 775 F.2d at 112, 117. Moreover, in the context of a subpoena enforcement action, consideration of the type of APA defense asserted by the University would impede the EEOC's statutory mandate to promptly investigate whether a Title VII violation has occurred.

Although our jurisprudence clearly allows the University to raise constitutional and abuse of process defenses to a Title VII subpoena enforcement action, we hold that the University cannot assert an APA

---

**9.** For example, in *EEOC v. Shell Oil Co.,* the Court observed that before the EEOC can insist that an employer obey a subpoena, the party alleging discrimination must file a valid charge, and the employer must receive timely notice of that charge. 466 U.S. at 65, 81–82, 104 S.Ct. at 1629, 1637–38, 80 L.Ed.2d 41 (1984). Otherwise, the Court noted, "Congress' desire to prevent the Commission from exercising unconstrained investigative authority would be thwarted." *Id.* at 65, 104 S.Ct. at 1629.

rule-making defense at this stage of these proceedings to defeat the EEOC's subpoena power. We expressly do not reach the question whether an APA defense can be raised at a later stage in the proceedings. Accordingly, we will affirm the district court's order barring the University from raising its first amendment and APA claims as defenses to this subpoena enforcement action.

### D. Redaction

 Finally, the University contends that if the subpoena is enforced, the district court should have ordered the peer review records redacted to delete "names and identifying data" of professors other than the charging party. See Franklin & Marshall, 775 F.2d at 117. The EEOC, meanwhile, maintains that: (1) Franklin & Marshall did not mandate redacted records; (2) the University never offered to provide redacted records; and (3) redacted records would be useless.

In Franklin & Marshall, the district court's redaction order was entered with the EEOC's concurrence. Thus, we question the EEOC's claim that redacted records are useless. Although we realize that the University never offered to provide redacted records, we believe that given the present posture of this case, it should have the opportunity to formally raise this possibility before the trial court.

On this limited record, we believe the University has offered reasons that may justify redaction.[10] Resolution of this issue, however, must be made by the district court on the basis of a full record. If the district court orders redaction, the parties should be able to agree on a proper form. Failing that, the district court can resolve any dispute in a manner that ensures the redacted records are not so distorted by deletions that they are useless for EEOC investigative purposes. See generally EEOC v. University of Notre Dame, 715 F.2d at 338 (requiring redaction and outlining redaction procedures).

Thus, we will vacate that portion of the district court's order to the extent it required the release of nonredacted records, and remand for further consideration of the redaction issue.

For these reasons, we will affirm in part and vacate in part the district court's order. Each party shall bear its own costs.

10. For example, the University notes that the EEOC has not insisted on unredacted records in previous similar cases, and that the identity and affiliation of individuals who evaluate the tenure candidates are irrelevant to the EEOC's investigation of a discrimination charge.