APV NORTH AMERICA, INC., Plaintiff,

v.

SIG SIMONAZZI NORTH AMERICA, INC., Defendant.

No. CIV.A.01–840–JJF.

United States District Court, D. Delaware.

April 30, 2002.

Josy W. Ingersoll, Adam W. Poff, Young Conaway Stargatt & Taylor, LLP, Wilmington, DE, Leydig, Voit & Mayer, Ltd., Chicago, IL (Charles S. Oslakovic, Charles H. Mottier, of counsel), for Plaintiff.

Frederick L. Cottrell, III, Thomas H. Kovach, Richards, Layton & Finger, Wilmington, DE, Michael A. O'Neil, P.C., Dallas, Texas, (of counsel), for defendant.

**OPINION**

FARNAN, District Judge.

Presently before the Court is a Motion To Dismiss Or, In The Alternative, To Transfer Or Stay (D.I.8) filed by Defendant, Sig Simonazzi North America, Inc. For the reasons discussed, Defendant's Motion To Dismiss will be denied, Defendant's Motion To Transfer will be granted, and Defendant's Motion To Stay will be denied as moot.

**BACKGROUND**

**I.  Procedural Background**

Plaintiff, APV North America, Inc. ("APV") filed this patent action against Defendant, Sig Simonazzi North America,

Inc. ("Sig Simonazzi") on December 18, 2001, seeking a declaratory judgment of non-infringement and invalidity of patents owned by Sig Simonazzi (the "Delaware action") and claiming infringement by Sig Simonazzi of patents owned by APV. Approximately four months earlier, Sig Simonazzi, as its predecessor, SASIB Bakery of North America, Inc. ("SASIB Bakery"), filed a patent infringement action against APV Baker, a division of APV, in the United States District Court for the Eastern District of Texas (the "Texas action"). However, the Complaint in the Texas action was not served on APV until December 19, 2001, a day after the Delaware action was filed by APV. Thereafter, Sig Simonazzi filed the instant Motion seeking to dismiss, or in the alternative, to transfer or stay this action.

## II.  Factual Background

### A.  *The Parties*

APV and Sig Simonazzi are direct competitors in the baking industry. (Neugent Decl. ¶ 9, Amended Cmplt. at ¶ 6). Both APV and Sig Simonazzi are incorporated in Delaware, but neither APV nor Sig Simonazzi have offices or manufacturing facilities in Delaware. (Amended Cmplt. at ¶¶ 2–3). APV has a place of business in Schiller Park, Illinois and manufacturing facilities in Goldsboro, North Carolina. (Amended Cmplt. at ¶¶ 2, 5). APV sells its baking and proofing equipment through one of its unincorporated operating divisions, APV Baker, which is also located in Goldsboro, North Carolina. (Amended Cmplt. at ¶ 5).

Sig Simonazzi has its manufacturing facilities and principal place of business in Plano, Texas. (Neugent Decl. at ¶¶ 2, 14). Sig Simonazzi also conducts its business through a division, Sig Stewart Systems, which is also located in Plano, Texas. (Amended Cmplt. at 3).

### B.  *The Texas Action*

On August 8, 2001, SASIB Bakery filed a patent infringement action against APV Baker in the Eastern District of Texas (the "Texas action"). The Texas action alleges infringement of five patents related to commercial proofing and baking devices, U.S. Patent No. 4,972,941, No. 5,147,033, No. 5,579,897, No. 5,649,619, and No. 5,871,084. The Texas action also alleges false designation of origin and false representations in interstate commerce.

Subsequently, an Amended Complaint was filed in the Texas action changing the name of the plaintiff from SASIB Bakery to "Sig Stewart Systems f/k/a SASIB Bakery North America, Inc." Although filed in August, the Texas action was not served on APV Baker until December 19, 2001, approximately 133 days after the issuance of the summons and the filing of the Complaint. In at least part of the time between the filing of this action and its service on APV Baker, the parties were involved in settlement discussions.

Pending in the Texas action is a motion to dismiss the Amended Complaint filed by APV Baker and a contingent motion to transfer. By its motion, APV Baker alleges that the Texas action is defective because (1) service was not completed within the time period prescribed by Federal Rule of Civil Procedure 4(m); (2) the action fails to name the correct parties, because APV Baker lacks the capacity to be sued and SASIB Bakery and Sig Stewart Systems lack the capacity to bring suit; (3) Sig Stewart Systems is not the real party in interest, because it does not own the asserted patents; and (4) SASIB lacks standing to bring suit because it does not own the patents in suit.

### C.  *The Delaware Action*

On December 18, 2001, immediately after the termination of settlement discus-

sions between the parties, APV filed the instant action seeking a declaratory judgment of non-infringement and invalidity of the five patents raised in the Texas action, and two additional patents, U.S. Patent No. 4,836,360 [1] and 5,056,654. In addition, APV asserts a claim for infringement against Sig Simonazzi of two patents owned by APV, U.S. Patents No. 4,997,365 and 5,010,808.

## DISCUSSION

### I. Motion to Dismiss

By its Motion, Sig Simonazzi requests that the Court dismiss this action pursuant to the first-filed rule and the Court's discretion to hear cases under the Declaratory Judgment Act, 28 U.S.C. § 2201. Sig Simonazzi contends that the Texas action was filed first and involves the same patents as the Delaware action. Sig Simonazzi further contends that for all relevant purposes the parties in the Texas action are the same parties in the Delaware action, because APV Baker is a wholly-owned operating division of APV and Sig Simonazzi was formerly known as SASIB.

In response, APV contends that the first-filed rule does not apply to the Texas action, because the Texas action does not involve the same parties and the same issues. APV contends that the Delaware action should be deemed to be the first-filed action, because the pleadings in the Texas action are fatally defective and the Texas action is an anticipatory suit that was brought by Sig Simonazzi in bad faith.

■■■ The first-filed rule is a judicial construct aimed at conserving judicial resources and safeguarding litigants by preventing concurrent duplicative litigation of the same issues between the same parties in more than one federal court. *EEOC v.*

*University of Pennsylvania,* 850 F.2d 969 (3d Cir.1988). Under this rule, priority is given to an earlier filed action, such that any subsequently filed action involving the same parties and the same issues should be stayed and/or transferred to the court in which the earlier filed action is pending. The Court of Appeals for the Third Circuit has recognized that invocation of the first-filed rule "will usually be the norm, not the exception." *Id.* at 979. Thus, while the district court has discretion to depart from the first-filed rule, that discretion may only be exercised in "exceptional circumstances." *Id.*

■■■ As a threshold matter, APV contends that the first-filed rule is inapplicable, because the Texas action does not involve the same patents as the Delaware action. In the Delaware action, APV has added claims for infringement based upon two of its patents which were not named in the Texas action. In support of its argument, APV directs the Court to *Osteotech, Inc. v. GenSci Regeneration Sciences,* 6 F.Supp.2d 349 (D.N.J.1998), a patent case in which the District Court for the District of New Jersey concluded that the first-filed rule was inapplicable and transferred the case to California, the second-filed jurisdiction, because the public and private interests weighed in favor of the transfer.

In response, Sig Simonazzi contends that APV should not be permitted to defeat the first-filed rule by adding two of its own patents to the Delaware action. Sig Simonazzi contends that APV can add its claims as counterclaims in the Texas action. Sig Simonazzi further contends that *Osteotech* is distinguishable, because "the second-filed action included additional state law claims and, most importantly, an additional necessary party" over whom the

1. U.S. Patent No. 4,836,360 was originally asserted by Sig Simonazzi in the Texas action, but was subsequently removed from the ac-

tion when Sig Simonazzi filed its Amended Complaint.

first-filed New Jersey court had no personal jurisdiction. Thus, Sig Simonazzi contends that "[w]hile APV inaccurately implies that the case was transferred because of an additional patent, in actuality the Court based its decision on its lack of jurisdiction over the additional party and the weight of the transfer factors." (D.I. 16 at 7).

. After reviewing the *Osteotech* decision in light of the facts of this case, the Court is not persuaded by Sig Simonazzi's attempts to distinguish it. First, APV does not use the *Osteotech* decision for the proposition that pressing an additional patent warrants retaining this case in the second-filed jurisdiction. Rather, APV relies on *Osteotech* to support its position that the first-filed rule is inapplicable. In *Osteotech*, the court concluded that the patent actions filed in California and New Jersey were not the same for purposes of applying the first-filed rule, because the California action advanced three additional patents not at issue in the New Jersey action and three additional California tort claims.

As for the relevance of the additional party in *Osteotech*, the Court assumes that Sig Simonazzi is referring to GenSci Canada. Contrary to Sig Simonazzi's argument, GenSci Canada was not a party to the California action, but only a party in the New Jersey action. Thus, the presence of the additional party was not so much relevant to the court's transfer decision as it was relevant to its decision that the California and New Jersey actions were not the same.

As in *Osteotech*, in this case, different patents and different claims are involved in the Texas and Delaware actions. While it is true that other courts in this jurisdiction have concluded that additional claims do not render an action "different" for purposes of applying the first-filed rule, those cases have also required the presence of the "same set of facts" to support their findings that the two cases are the same. *See e.g. Filler v. Lernout,* C.A. No. 01–191–SLR, 2002 WL 227079, *2 (D.Del. Feb.8, 2002). In this case, however, the addition of the APV patents not only involves claims not asserted in Texas, but it also involves facts not involved in the Texas action. Specifically, the additional APV patents involve the entire structure of a bakery conveyor, while the Sig Simonazzi patents deal more specifically with the magnetic grids for holding the baking pans to the conveyor. Thus, while the inventions are not entirely unrelated, they do involve different technologies and thus, different facts.

Sig Simonazzi contends that identicality between the issues is not required to invoke the first-filed rule. Sig Simonazzi contends that it is sufficient for the two actions to have "substantial overlap." The "substantial overlap" inquiry is used by the Court of Appeals for the Fifth Circuit in determining whether the first filed rule should apply. However, the Court has been unable to locate any case law suggesting that this is the test to be used in this Circuit. Sig Simonazzi directs the Court to *Mentor Graphics v. Quickturn Design Sys., Inc.,* 77 F.Supp.2d 505 (D.Del.1999) for the proposition that identicality between the actions is not required for application of the first-filed rule. However, the Court is not persuaded that the Mentor Graphics decision supports that proposition. In *Mentor,* the court transferred a second-filed Delaware action to California, the first-filed district, even though the Delaware and California actions involved different patents and different technologies. However, the court's decision to transfer was not based on the application of the first-filed rule, but on the transfer inquiry under 28 U.S.C. § 1404.

In sum, the Court finds that the Texas action and the Delaware action are not the same, because they implicate different patents and different technologies. Thus, the Court concludes that the first-filed rule is inapplicable to this case. Accordingly, the Court will deny Sig Simonazzi's Motion To Dismiss insofar as it is based upon the first-filed rule.

## II. Motion To Transfer And/Or Stay

■ In the alternative, Sig Simonazzi requests the Court to transfer the instant action to Texas pursuant to 28 U.S.C. § 1404(a). In pertinent part, Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought." 28 U.S.C. § 1404(a). Although the Court must weigh the factors present in § 1404(a), a "plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request," and " 'should not be lightly disturbed.' " *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir.1970) (quoting *Ungrund v. Cunningham Brothers, Inc.*, 300 F.Supp. 270, 272 (S.D.Ill.1969)), *cert. denied*, 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971). Thus, unless the "balance of convenience of the parties is strongly in favor of the defendant, the plaintiff's choice of forum should prevail." *Id.* (quoting *Owatonna Mfg. Co. v. Melroe Co.*, 301 F.Supp. 1296, 1307 (D.Minn.1969)). Moreover, transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of transfer. *Allied–Signal, Inc. v. Honeywell, Inc.*, C.A. No. 90–395–JJF (D.Del. Feb.6, 1991).

■ In adjudicating a Section 1404 motion, courts consider both the public and private interests. With regard to the private interests, courts consider several factors, including: (1) whether the action could have been properly brought in the proposed transferee court; (2) the convenience of the parties due to their relative physical and financial conditions; (3) the convenience of the expected witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (4) the location of books and records, to the extent that these books and records could not be produced in a certain forum.

■ With regard to the public interests, courts consider such factors as

(1) the enforceability of the judgement, (2) practical considerations regarding the ease, speed, or expense of trial, (3) the administrative difficulty due to court congestion; (4) the local interest in deciding local controversies in the home forum, (5) the public policies of the two fora, and (6) the trial judge's familiarity with the applicable state law in diversity cases.

*Memminger v. InfoCure Corp.*, C.A. 00–707–JJF, slip. op. At 4 (D.Del. Nov. 14, 2000) (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir.1995)).

### A. Private Factors

■ In this case, APV does not dispute that this action could have properly been brought in the Eastern District of Texas. Therefore, the Court must consider the remaining private factors relevant to a transfer determination. In evaluating these factors, the Court concludes that the balance of these factors weighs in favor of transferring this action to the Eastern District of Texas. Although APV and Sig Simonazzi are Delaware corporations, neither conducts business or has facilities in Delaware. Although a party's incorporation in Delaware is not irrelevant to the Court's decision, it is not dispositive. Where an alternative forum is more convenient and has more substantial connections

with the litigation "incorporation in Delaware will not prevent transfer." *Green Isle Partners, Ltd. S.E. v. Ritz Carlton Hotel Co.*, C.A. No. 01–202–JJF (D.Del. Nov. 2, 2001); *Brunswick Corp. v. Pecor, Inc.*, C.A. No. 00–691–GMS (D.Del. Dec. 12, 2000).

In this case, APV's principal place of business is in North Carolina and its counsel is located in Chicago. Thus, for APV significant travel will be required regardless of whether this case proceeds in Delaware or Texas. On the other hand, for Sig Simonazzi, whose principal place of business and counsel are located in Texas, trial in Delaware would be greatly inconvenient with little benefit to APV. Further, the patents at issue relate to machinery that is manufactured in Texas, not Delaware, and no infringement is alleged to have occurred in Delaware. In these circumstances, it is appropriate to give the plaintiff's choice of forum less deference. *Brunswick Corp.*, C.A. No. 00–691 at 4 (" '[T]he transfer of a case will generally be regarded as less inconvenient to a plaintiff if the plaintiff has not chosen … a forum where the alleged wrongful activity occurred.' ") (citations omitted).

In addition, the location of witnesses and documents also favors a transfer of this action to Texas, because many of the relevant witnesses and documents are already available in Texas. *Omnicom Group, Inc. v. Employers Reinsurance Corp.*, C.A. No. 01–839–GMS, 2002 WL 109346 (D.Del. Jan.28, 2002) (noting that documents and witnesses already present in state where transfer is sought provides efficiency as practical matter). APV contends that many of its witnesses will be coming from international locations and that the Philadelphia international airport provides a closer airport for such witnesses than the Dallas–Fort Worth Airport. Again, for APV, its witnesses and its relevant documents, travel is inevitable, and the Court

cannot conclude that the proximity of the Philadelphia Airport to Europe versus the proximity of the Dallas–Fort Worth Airport to Europe is sufficient to tip the balance in favor of maintaining this action in Delaware.

B. *Public Interest Factors*

In addition to the private factors weighing in favor of transferring this action, the Court further concludes that the public interest factors weighs in favor of transferring this action to Texas. Discovery has already begun in the Texas action and a trial date has been set by the Texas court for June 2, 2003. In addition, the Texas court has ordered mediation to proceed in this action during the pendency of discovery, so that the case may take the "double track" of being ready for trial while simultaneously keeping the parties open to the possibility of a mediated resolution.

In contrast, discovery is not set to commence here until May 10, 2002, dispositive motions are not due until July 3, 2003, and mediation is not readily available due to recent case management changes in this District. Given the progress of the Texas action and the deadlines set by the Texas court, the Court believes that allowing this action to proceed in Delaware would duplicate the parties' efforts and expenses, thereby reducing efficiency overall. Accordingly, the Court concludes that the balance of the relevant public and private factors weighs in favor of transferring this action to the Eastern District of Texas. Having concluded that this action should be transferred to Texas, Sig Simonazzi's request for a stay will be denied as moot.

**CONCLUSION**

For the reasons discussed, the Court will deny Defendant's Motion To Dismiss, grant Defendant's Motion To Transfer and

deny as moot Defendant's Motion For a Stay.

An appropriate Order will be entered.

### ORDER

At Wilmington, this 30th day of April 2002, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that:

1. Defendant's Motion To Dismiss (D.I.8) will be DENIED.

2. Defendant's Motion To Transfer (D.I.8) will be GRANTED.

3. Defendant's Motion To Stay (D.I.8) will be DENIED AS MOOT.