**In re HUSCO, INC., Debtor.**

**Husco, Inc., Plaintiff,**

**v.**

**Southern Bleacher Company, Inc., Sherrill Pettus, and Mark Alloju, Defendants.**

**Bankruptcy No. 01–25177–BM.**
**Adversary No. 01–2186–BM.**

United States Bankruptcy Court,
W.D. Pennsylvania.

Oct. 17, 2001.

---

William Weiler, Jr., Esq., Cranberry Township, PA, for Plaintiff.

Paul H. Titus, Esq., Schnader, Harrison, Segal & Lewis, Pittsburgh, PA, for Defendants.

## *MEMORANDUM OPINION*

BERNARD MARKOVITZ, Bankruptcy Judge.

Two motions are before the court at this time.

Defendants Southern Bleacher Co., Inc., Sherill Pettus, and Mark Alloju have brought pursuant to Federal Rule of Civil Procedure 12(b)(6) a motion to dismiss the complaint against them in the above adversary action.

Debtor Husco, Inc. has brought a motion to permanently enjoin Southern from litigating, except in this court, any of the pre-petition claims Southern asserted against debtor in a lawsuit which was pending in the United States District Court for the Western District of Texas when debtor filed its bankruptcy petition in this court.

We will deny both motions for reasons set forth in this memorandum opinion.

### — FACTS —

Debtor is in the business of installing seats at sports venues.

Southern is in the business of manufacturing and of installing seats at sports venues. Southern's president is Sherill Pettus. Its treasurer and chief financial officer is Mark Alloju.

Debtor and Southern entered into numerous contracts beginning in 1998, whereby debtor agreed to install seats at various sports venues pursuant to contracts Southern had with third parties. Their business relationship ultimately proved to be a fractious one.

Southern brought suit in state court in Texas on December 7, 2000, against debtor and two of its principals for breach of contract and fraud in connection with eleven of the above contracts between them. Debtor and its principals had the lawsuit removed to the United States District Court for the Northern District of Texas on January 12, 2001.

The federal district court dismissed the action against debtor's principals due to lack of personal jurisdiction on May 4, 2001, but refused to do so with respect to debtor on the same ground.

· Debtor answered the complaint on May 11, 2001. It admitted entering into the eleven contracts in question but denied breaching them or defrauding Southern. Debtor did not assert any counterclaims against Southern in its answer.

Four days later, on May 15, 2001, debtor filed a voluntary chapter 11 petition in this court. Southern is not listed anywhere in the schedules as having a claim of any kind against debtor's bankruptcy estate.

Shortly thereafter, on May 25, 2001, debtor commenced the above adversary action against Southern, Pettus, and Alloju in connection with twenty-three of the contracts debtor had entered into with Southern. Eight of the twenty-three contracts at issue were also at issue in the complaint Southern had filed in Texas. The remaining fifteen contracts were not at issue in the lawsuit previously commenced by Southern. Among other things, debtor maintained that defendants had falsely represented that each of the twenty-three contracts was not a prevailing-wage job.

Count I and Count II of the complaint respectively assert claims against Southern for breach of contract and for unjust enrichment. Pettus and Alloju are not named as defendants in these counts of the complaint. Count III asserts a claim against Southern, Pettus, and Alloju for "fraud and misrepresentation". Count IV asserts a claim against Pettus and Alloju for civil violations of RICO, in particular of 18 U.S.C. §§ 1962(b) and (c). Southern is

not named as a defendant with respect to Count IV.

Defendants Southern, Pettus, and Alloju brought a motion on July 5, 2001, to dismiss the adversary action against for various reasons.

Debtor in turn brought a motion on August 1, 2001, to permanently enjoin Southern from litigating its pre-petition claims against debtor in any forum other than this bankruptcy court.

Oral argument on both motions was heard on September 10, 2001.

On September 18, 2001, Southern filed an unsecured nonpriority proof of claim in the amount of $257,995.31. Its claims appears to encompass the same matters and issues it had raised in the now-stayed lawsuit in Texas.

## — DISCUSSION —

■ An action may be dismissed in accordance with Federal Rule of Civil Procedure 12(b)(6) [1] when it appears beyond doubt that a plaintiff can prove no set of facts consistent with the allegations of the complaint which would entitle the plaintiff to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

■ When considering a Rule 12(b)(6) motion, we must treat all allegations in the complaint as true and must draw all reasonable inferences therefrom in a light that is most favorable to the non-moving party. *Brown v. Philip Morris, Inc.,* 250 F.3d 789, 796 (3d Cir.2001). We need not, however, accept as true unsupported conclusions and unwarranted inferences. *City of Pittsburgh v. West Penn Power Co.,* 147 F.3d 256, 263 n. 13 (3d Cir.1998).

### I.) *The First–Filed Rule.*

According to defendants, the causes of action debtor has asserted in this adversary action are in the nature of compulsory counterclaims which debtor was required to assert when it answered the complaint in the lawsuit against it pending in federal court in Texas. Because debtor failed to do so, defendants assert, debtor is now barred by virtue of the so-called "first-filed rule" from asserting these causes of action in this adversary action.

■ It should be noted preliminarily that no judgment had issued in the Texas lawsuit before it was automatically stayed when debtor filed its voluntary bankruptcy petition. We therefore see no good reason why debtor's failure to assert any compulsory counterclaims in its answer should, as a matter of law, have any ramifications for the causes of action it has asserted in this adversary action.

Even if this last observation is set aside and we assume, for the sake of argument, that the causes of action asserted in this adversary action are in the nature of compulsory counterclaims which debtor in principle ought to have asserted in the Texas lawsuit, the first-filed rule does not apply here.

■ It is a principle of long standing that where there is concurrent federal jurisdiction over a dispute, the court which has possession of the dispute first generally must decide it. *Crosley Corp. v. Hazeltine Corp.,* 122 F.2d 925, 929 (3d Cir.1941), cert. denied, 315 U.S. 813, 62 S.Ct. 798, 86 L.Ed. 1211 (1942) (citing *Smith v. McIver,* 22 U.S. 532 (9 Wheat.), 6 L.Ed. 152 (1824)).

---

**1.** Pursuant to Federal Rule of Bankruptcy Procedure 7012(b), Federal Rule of Civil Procedure 12(b)(6) applies to adversary actions.

 The first-filed rule encourages sound judicial administration and promotes comity among federal courts of equal rank. *E.E.O.C. v. University of Pennsylvania,* 850 F.2d 969, 971 (3d Cir.1988), *aff'd.,* 493 U.S. 182, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990). It gives a federal court "the power" to enjoin a *second* prosecution of proceedings in another federal court involving the same parties and the same issues that also are before the first court. *See Triangle Conduit & Cable Co. v. National Electric Products Corp.,* 125 F.2d 1008, 1009 (3d Cir.), *cert. denied,* 316 U.S. 676, 62 S.Ct. 1046, 86 L.Ed. 1750 (1942).

 This "power" is not a mandate "directing wooden application of the rule" without regard to extraordinary circumstances. *E.E.O.C.,* 850 F.2d at 972. A court having power under the first-filed rule in certain situations has discretion to depart from its application. *Id.*

 The first-filed rule does not apply here because this court, the forum of the *second* lawsuit between debtor and Southern, would not seem to have "the power" to enjoin which arises under the rule. If, as movants apparently assume, we have such power under the first-filed rule and were to exercise it here, we effectively would prevent a party who has brought a lawsuit in this forum from prosecuting a lawsuit it has brought in this forum. This is not what the first-filed rule is about. The power to so enjoin would seem to lie instead with the federal court where the *first* lawsuit was commenced—i.e., the United States District Court for the Northern District of Texas. Defendants

have cited to no authority for the proposition that the forum of the second lawsuit has power by reason of the first-filed rule to enjoin further proceedings in the second action.[2]

 To the extent that this court does have "the power" to apply the first-filed rule in this instance as defendants request, we refuse to exercise our discretion to dismiss this adversary action in its entirety.

The first-filed rule, we have noted, is not an inflexible principle to be applied mechanically, *E.E.O.C.,* 850 F.2d at 976. The rule is grounded on equitable principles. 850 F.2d at 977. The primary purpose of the rule is to avoid burdening the federal judiciary and to prevent embarrassment arising from conflicting judgments. *Id.*

Little or no burden will be placed upon the federal judiciary should this adversary action be permitted to go forward because the lawsuit in Texas has been automatically stayed. Moreover, it is highly unlikely that the embarrassment of conflicting judgments will occur if this case goes forward. Southern has filed a proof of claim in this bankruptcy case which apparently encompasses the claims underlying its complaint in the lawsuit now stayed. Their resolution in this bankruptcy case will render it unnecessary for any judgment at all to be entered in the other case.

## II.) *Count III: Common Law Fraud.*

Count III of the complaint in this adversary action asserts a claim for common law fraud. According to debtor, Southern defrauded debtor when Southern's em-

---

**2.** The federal court in Texas also presently is without "the power" to issue such an injunction in light of the automatic stay, which took effect immediately upon the filing of debtor's bankruptcy petition in this court. Absent relief from the automatic stay, such an order would be void *ab initio* or, at the very least,

voidable. *See Constitution Bank v. Tubbs,* 68 F.3d 685, 692 n. 6 (3d Cir.1995). Unless relief from stay is granted, the automatic stay remains in effect until the bankruptcy case is dismissed or closed, or until a discharge is granted or denied. 11 U.S.C. § 362(c)(2).

ployees falsely represented to debtor that projects at issue in this case were not prevailing-wage jobs when in reality they were.

■■■ To state a cause of action for fraud, debtor must establish the following: (1) a representation; (2) which is material to the transaction at hand; (3) which was falsely made with knowledge of its falsity or with reckless disregard as to its truth or falsity; (4) which was made with the intent of misleading debtor to rely on it; (5) which misrepresentation debtor justifiably relied upon; and (6) that debtor suffered a resulting injury which was proximately caused by its reliance.[3] See *Gibbs v. Ernst*, 538 Pa. 193, 207, 647 A.2d 882, 889 (1994).

■■■ Defendants assert that we must dismiss Count III because, as a matter of law, debtor cannot establish the fifth of the above required elements—i.e., that it justifiably relied upon debtors' alleged misrepresentations that the projects in question were not prevailing-wage jobs. One who knows that a representation is false cannot claim that it was defrauded by the misrepresentation. *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 746–47 (3d Cir.1996). According to defendants, debtor had a duty, as a matter of law, to determine for itself whether its employees fell within the scope of any applicable prevailing-wage law. From this defendants would have us infer that any reliance debtor placed upon such a misrepresentation by defendants concerning this matter was not justifiable.

While we find it difficult to comprehend how any reliance debtor may have placed upon such alleged misrepresentations by defendants was justifiable in light of debtor's extensive experience as a contractor for such projects, we are not prepared to conclude at this preliminary stage of this case that, as a matter of law, any such reliance by debtor was not justifiable. The cases to which defendants call our attention in our estimation do not establish the legal proposition defendants would have us adopt here. Prudence dictates that we await development of the evidence concerning the circumstances surrounding debtor's supposed reliance before drawing any conclusions pertaining to the justifiability of such reliance by debtor.

### III.) *Count IV: Civil RICO.*

Count IV of the complaint asserts a civil RICO cause of action against defendants Pettus and Alloju for alleged violations of 18 U.S.C. §§ 1962(b) [4] and (c). Southern is *not* named as a defendant in Count IV.

Section 1962 of RICO provides in part as follows:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . .

18 U.S.C. § 1962(c).

■■■ Although it is a criminal statute, RICO makes provision for bringing a civil action against a wrongdoer who vio-

---

**3.** In the absence of any indication from the parties concerning the law of which state should apply to this case, we have applied the common law of Pennsylvania.

**4.** At the hearing on defendants' motion to dismiss the complaint, debtor's counsel stated

on the record that debtor wished to withdraw its § 1962(b) cause of action. In light of this we will not address the merits of defendants' motion to dismiss Count IV as it pertains to § 1962(b) but instead will limit our discussion to § 1962(c).

lates RICO. Any person whose person or property is injured by reason of a violation of § 1962 may bring suit in any appropriate district court of the United States and, if they prevail, shall recover treble damages and costs of the suit, including a reasonable attorney's fee. 18 U.S.C. § 1964(c).

"Person" for purposes of RICO includes any individual or entity capable of holding a legal or beneficial interest in property. 18 U.S.C. § 1961(3). Defendants Pettus and Alloju unquestionably qualify as "persons" for purposes of RICO. They are individuals who are capable of holding a legal or equitable interest in property.

"Enterprise" includes any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity. 18 U.S.C. § 1961(4).

Only certain enumerated state law crimes such as murder, bribery and extortion and certain specified federal crimes, including mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343), qualify as instances of "racketeering activity". 18 U.S.C. § 1961(1).

A "pattern of racketeering activity" requires at least two racketeering activities occurring within a ten-year period of one another. 18 U.S.C. § 1961(5).

One must prove four elements to recover under § 1962(c): (1) the existence of an enterprise engaged in or affecting interstate commerce; (2) that defendant was employed by or associated with the enterprise; (3) that defendant conducted or participated, directly or indirectly, in the conduct or affairs of the enterprise; and (4) that defendant participated through a pattern of racketeering activity that included at least two racketeering acts. *Annulli v. Panikkar*, 200 F.3d 189, 198 (3d Cir.1999).

Defendants Pettus and Alloju are identified in Count IV of the complaint as the "persons" required for purposes of § 1961(3). See ¶ 252. Southern is identified as the "enterprise" for purposes of § 1961(4). See ¶ 256. Defendants Pettus and Alloju are characterized as being associated with Southern as its officers. See ¶ 254.

Undergirding Count IV is the allegation, which we must treat as true for purposes of the present Rule 12(b)(6) motion, that certain identified employees of Southern, acting at the direction of defendants Pettus and Alloju, fraudulently represented to debtor that eleven of the projects at issue in this adversary action were not prevailing-wage jobs when in reality they were.

Count IV pleads the following predicate acts of racketeering activity: common law fraud (¶¶ 282, 284, 285); federal tax fraud (¶¶ 278, 286); mail fraud (¶¶ 281, 287); wire fraud (¶¶ 283); and violations of federal and state prevailing-wage laws (¶ 264). It is further alleged that the conduct of Pettus and Alloju in utilizing and controlling Southern to commit various acts of common law fraud, federal income tax fraud, wire fraud, and mail fraud constitute a pattern of racketeering activity. ¶ 288.

Defendants Pettus and Alloju are correct in asserting that common law fraud, federal tax fraud, and violations of federal and state prevailing-wage laws cannot serve as predicate acts which are required for a pattern of racketeering activity. The list of acts constituting "racketeering activity" found at § 1961(1) is *exhaustive*. *Annulli*, 200 F.3d at 200. The only predicate acts listed at § 1961(1) which are alleged in Count IV are mail fraud and wire fraud. The other alleged predicate acts identified in Count IV—i.e., common law fraud, federal tax fraud, and

violations of federal and state prevailing-wage laws—are not listed and consequently do not qualify as predicate acts of racketeering.

■ The only qualifying predicate acts which are pled—i.e., three instances of mail fraud in 1998, 1999, and 2000 (¶ 282) and eleven instances of wire fraud (¶ 283)—all allegedly occurred within a three-year period. Either or both of these multiple offenses would suffice to plead a "pattern of racketeering activity" for purposes of § 1961(5) and, ultimately, for § 1962(c).

Defendants Pettus and Alloju also maintain for another reason that the alleged acts of wire and mail fraud are not properly pled.

■ Federal Rule of Civil Procedure 9(b), which applies to this adversary action by reason of Federal Rule of Bankruptcy Procedure 7009, requires that the circumstances concerning averments of fraud be "stated with particularity". Because the predicate acts of mail and wire fraud involve fraud, they are subject to the requirements of Federal Rule of Civil Procedure 9(b). *Saporito v. Combustion Engineering, Inc.* 843 F.2d 666, 673 (3d Cir.1988), *vacated on other grounds*, 489 U.S. 1049, 109 S.Ct. 1306, 103 L.Ed.2d 576 (1989) (*citing Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786 (3d Cir.1984), *cert. denied*, 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985)).

According to defendants Pettus and Alloju, Count IV must be dismissed because debtor has failed to plead the alleged predicate acts of mail fraud and wire fraud with particularity, as required by Federal Rule of Civil Procedure 9(b). Their contention is without merit in this instance.

■ The purpose of Federal Rule of Civil Procedure 9(b) is to provide defendants with notice of the "precise misconduct" of which they are accused, and to safeguard against spurious charges of immoral and fraudulent behavior. *Seville Industrial Machinery*, 742 F.2d at 791. Focusing exclusively on the reference to particularity in this context is too narrow an approach because it fails to take account of the general simplicity and flexibility contemplated by the federal rules of civil procedure. *Christidis v. First Pennsylvania Mortgage Trust*, 717 F.2d 96, 100 (3d Cir.1983). Federal Rule of Civil Procedure 9(b) only requires a plaintiff to plead the "circumstances" of fraud with particularity. *Seville Industrial Machinery*, 742 F.2d at 791. While allegations of "date, place time" normally would suffice to satisfy the requirements of Federal Rule of Civil Procedure 9(b), they are not necessary. The party pleading fraud is required only to inject a measure of precision and substantiation into the fraud allegations. *Id.*

■ We are satisfied that debtor has sufficiently pleaded the circumstances of mail fraud and wire fraud in this case and has injected the required measure of precision and substantiation into the fraud allegations.

With respect to wire fraud, for instance, debtor asserts that defendants committed eleven distinct acts of wire fraud in directing two other identified employees of Southern to telephonically communicate oral misrepresentations to debtor that the eleven projects were non-prevailing-wage jobs (¶ 283). Each of these eleven projects is described elsewhere in the complaint. The individuals who contacted debtor at the direction of defendants about installing the seats for each project and the date on which the contact occurred are specified.

Such allegations, we conclude, inject a sufficient measure of precision and sub-

stantiation concerning the purported fraud. They provide defendants Pettus and Alloju with notice of the precise misconduct of which they are accused. Further specifics can be obtained through discovery.

■ To prevail on its civil RICO claim, debtor must establish that it suffered an injury that was caused by Pettus' and Alloju's violation of § 1962(c). A person injured in its property or business "by reason of a violation of section 1962" may bring a civil RICO action and, if successful, is entitled to recover treble damages and costs of the suit, including a reasonable attorney's fee. 18 U.S.C. § 1964(c).

■ Congress modeled § 1964(c) on the Clayton Act. The right of a plaintiff to sue under RICO, as under federal antitrust law, requires a showing that the RICO violation was the *proximate cause* of plaintiff's injury. *Holmes v. Securities Investor Protection Corp.,* 503 U.S. 258, 267–68, 112 S.Ct. 1311, 1317–18, 117 L.Ed.2d 532 (1992). In looking to the common law for guidance in defining the proximate cause requirement, the Supreme Court focused primarily upon the directness of the relationship between the asserted injury and the injurious conduct alleged. *Holmes,* 503 U.S. at 268, 112 S.Ct. at 1318. A RICO plaintiff who complains of "harm flowing directly from the misfortunes visited upon a third person by the defendant's acts" may not recover under § 1964(c). *Holmes,* 503 U.S. at 268–69, 112 S.Ct. at 1318.

■ Consistent with the Supreme Court's admonition concerning proximate causation, most courts have held that while reliance is not a required element of the criminal offenses of mail and wire fraud, it is required where mail fraud or wire fraud is alleged as the proximate cause of one's injury. Plaintiff must have justifiably relied, to its detriment, upon the fraudulent representation. E.g., *Summit Properties, Inc. v. Hoechst Celanese Corp.,* 214 F.3d 556, 559 (5th Cir.2000); *Chisolm v. TranSouth Financial Corp.,* 95 F.3d 331, 337 (4th Cir.1996); *Appletree Square I v. W.R. Grace Co.,* 29 F.3d 1283, 1286 (8th Cir. 1994).

■ Applying these legal precepts to the present case, we conclude that debtor *cannot,* as a matter of law, prevail and accordingly cannot recover damages for the acts of *mail* fraud defendants Pettus and Alloju allegedly committed when they created allegedly false federal tax returns for tax years 1998, 1999, and 2000 and then mailed them to IRS. Assuming that mail fraud occurred, IRS, not debtor, was injured as a proximate result of the tax fraud.

In light of what we have concluded heretofore concerning a pattern of racketeering activity, the only cognizable predicate acts for which debtor may recover treble damages and costs by reason of § 1964(c) are the eleven counts of alleged *wire* fraud defendants Pettus and Alloju are alleged to have committed when they directed certain of Southern's employees to telephonically misrepresent to debtor that the projects in question were not prevailing-wage jobs.

Defendants also maintain that debtor cannot recover under civil RICO even for these alleged criminal acts because debtor cannot have justifiably relied upon the above allegedly fraudulent telephonic representations that the eleven projects in questions were not prevailing-wage jobs. We previously rejected this same contention when considering defendants' assertion that we should dismiss the claim for common law fraud set forth in Count III of the complaint and also must reject it with respect to Count IV.

As we indicated previously, while we find it extremely difficult to at this time to comprehend how any reliance debtor may have placed upon such fraudulent representations by employees of Southern was justifiable, we are not willing to conclude at this very early stage of this case that any such reliance on debtor's part was not justifiable. In other words, we are not prepared at this time to conclude that debtor can prove no set of facts establishing that its reliance upon such false representation was justifiable.

▆▆▆ Finally, defendants Pettus and Alloju assert that we must dismiss Count IV because the "persons" accused of violating RICO are the same as the "enterprise". Southern, Pettus, and Alloju are identified in paragraph 7 of the complaint as "persons" for purposes of § 1961(3) and, along with Southern, are identified as comprising the "enterprise" for purposes of § 1961(4). As support for their contention that Count IV consequently must be dismissed, defendants Pettus and Alloju cite *Hirsch v. Enright Refining Co.*, 751 F.2d 628, 633–34 (3d Cir.1984), and *Brittingham v. Mobil Corp.*, 943 F.2d 297, 300–03 (3d Cir.1991).

Their contention is without merit in this instance for various reasons.

In the first place, paragraph 256 of the complaint asserts that Southern alone, as opposed to Southern, Pettus and Alloju together, constitutes the RICO "enterprise" for purposes of § 1961(4). This description of the alleged RICO enterprise, not the description found in paragraph 7, appears to be one upon which Count IV of the complaint is based. The unquestionably inconsistent description found at paragraph 7 plays no role in the civil RICO cause of action laid out in Count IV.

Applying the description of the RICO "enterprise" found at paragraph 256, we conclude that the present case is readily distinguishable from *Hirsch* and *Brittingham*. In contrast to *Hirsch* and *Brittingham*, the alleged "enterprise" in this case is *not* both a "person" charged with violating RICO and the "enterprise" whose affairs were conducted by the "person" through a "pattern of racketeering activity". Because it is not such a "person", Southern is not a defendant in Count IV.

The Third Circuit held in *Hirsch* the defendant "person" charged with violating RICO cannot be the same entity as the alleged "enterprise". The court observed that § 1962(c), by its plain language, requires the defendant "person" to be employed by or associated with the enterprise. Because it would be "illogical" for a corporation to be employed by or associated with itself, Enright Refining, the defendant in that case, could not simultaneously be both the defendant "person" and the "enterprise". *Hirsch*, 751 F.2d at 633. The court further observed that requiring the "enterprise" and the defendant "person" to be separate entities was consistent with the congressional purpose to punish criminals who infiltrate legitimate corporations without punishing corporations which may be innocent victims of racketeering activity. *Id.*, 751 F.2d at 633–34.[5]

*Brittingham* expanded the rule enunciated in *Hirsch*. Plaintiffs In *Brittingham* accused Mobil Oil Corp. and its wholly-owned subsidiary Mobil Chemical Co. of participating in an association-in-fact with their advertising agents and others to perpetrate a fraud. The court held that the distinctiveness requirement of *Enright*

---

**5.** This second rationale for the holding in *Hirsch* subsequently was undermined by the Supreme Court in *Sedima v. Imrex Co.*, 473 U.S. 479, 499, 105 S.Ct. 3275, 3286, 87 L.Ed.2d 346 (1985). *See Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., Inc.* 46 F.3d 258, 262–63 (3d Cir.1995).

would be eviscerated if a plaintiff could successfully plead that an "enterprise" was comprised of a defendant corporation in association with its employees, agents, and affiliated entities acting on its behalf. *Brittingham,* 943 F.2d at 301, 303.

As was noted previously, the alleged "enterprise" in this case—i.e., Southern— is not a defendant "person" in Count IV of debtor's complaint. Accordingly, the rationale for dismissing a § 1962(c) cause of action elaborated in *Enright* and expanded in *Brittingham* does not require dismissal of Count IV of the complaint in this adversary action.

We conclude in light of the foregoing that dismissal of Count IV in accordance with Federal Rule of Civil Procedure 12(b)(6) is not warranted. At the very least, debtor has stated a civil RICO claim pursuant to § 1962(c) for which it may be entitled to relief. Defendants' motion to dismiss Count IV therefore will be denied.

**IV.) *Motion For Permanent Injunction.***

Finally, debtor has brought a motion to permanently enjoin Southern from pursuing, except in this court, the lawsuit pending in the Northern District of Texas which was automatically stayed when debtor filed its chapter 11 petition on May 15, 2001. As far as we are able to determine, debtor seeks to prohibit Southern from pursuing its claims against debtor elsewhere once this bankruptcy case is completed and debtor has been generally discharged from its pre-petition debts.

Debtor's motion was mooted when, on September 18, 2001, Southern filed an unsecured nonpriority proof of claim in this case in the amount of $257,995.31. As far as we are able to ascertain, the proof of claim submitted by Southern involves the same transactions as were at issue in the lawsuit now stayed. Unless debtor or some other party-in-in-

terest objects and the objection is sustained, Southern's claim will be allowed. 11 U.S.C. § 502(a). It therefore appears that all of the claims and issues raised in that lawsuit will be decided one way or the other in this bankruptcy case and that there is no need for the injunction debtor seeks. Accordingly, we will deny debtor's request for a permanent injunction.

An appropriate order disposing of the motions discussed in this memorandum opinion shall issue.