An appropriate Order follows.

Steven LANDAU, on behalf of himself and all others similarly situated, Plaintiff,

v.

VIRIDIAN ENERGY PA LLC, Defendant.

CIVIL ACTION No. 16–2383

United States District Court, E.D. Pennsylvania.

Filed 04/03/2017

Jonathan Shub, Kevin Laukaitis, Kohn Swift & Graf PC, Philadelphia, PA, Troy M. Frederick, Marcus & Mack PC, Indiana, PA, for Plaintiff.

Maura Barry Grinalds, Richard T. Bernardo, Skadden, Arps, Slate, Meagher & Flom LLP, New York, NY, Daniel S. Blynn, Mary M. Gardner, Venable LLP,

Washington, DC, Jeffrey S. Pollack, Matthew A. Taylor, Duane Morris, LLP, Philadelphia, PA, Randall K. Miller, Venable LLP, Tysons Corner, VA, for Defendant.

## MEMORANDUM

Gerald Austin McHugh, United States District Judge

This is a putative class action brought by a Pennsylvania consumer who alleges that Viridian Energy PA LLC (Viridian) enticed him to shift his electric service with promises of meaningful savings that never materialized. Viridian now moves on the basis of the "first-filed rule" to transfer this case to the District of Connecticut where it is defending four similar cases. Alternatively, Viridian asks that I stay this case pending resolution in the Connecticut cases. For the reasons below, Viridian's Motion to Transfer is denied, but its Motion to Stay is granted.

## I. FACTS AND PROCEDURAL HISTORY

Defendant Viridian is an energy services company that markets electricity to retail customers in Pennsylvania. Plaintiff Steven Landau claims that, in July 2013, Viridian lured him from his local utility with promises of low, stable electricity rates. Six months after he signed up with Viridian, Landau's account was transferred to a Variable Rate Plan and his rates more than doubled. On these facts, Landau alleges that Viridian breached the terms of its contract and violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL). Landau asserts these claims on behalf of himself and current and former Viridian customers in Pennsylvania.[1]

On November 30, 2016, I granted in part and denied in part Viridian's Motion to Dismiss Landau's claims and denied its Motion to Strike Class Allegations. 223 F.Supp.3d 401 (E.D. Pa. 2016). The surviving claims include breach of contract and violation of the UTPCPL.

Viridian is defending four similar actions in the District of Connecticut: *Sanborn v. Viridian Energy, Inc.*, No. 14–cv–1731 (D. Conn. filed Nov. 19, 2014); *Steketee v. Viridian Energy, Inc.*, No. 15–cv–585 (D. Conn. filed Apr. 22, 2015); *Mirkin v. Viridian Energy, Inc.*, No. 15–cv–1057 (D. Conn. filed July 10, 2015); and *Hembling v. Viridian Energy, LLC*, No. 15–cv–1258 (D. Conn. filed Aug. 21, 2015). The plaintiffs' counsel in *Sanborn*, *Steketee*, and *Mirkin* recently filed a five-count consolidated complaint in which they seek relief for breach of contract, breach of the covenant of good faith and fair dealing, and violations of the Connecticut Unfair Trade Practices Act, the Massachusetts Unfair Trade Practices Act, the New Jersey Consumer Fraud Act, and the New York General Business Law. *Hembling* is currently stayed pending motions for class certification in the other three Connecticut cases.

The putative classes in *Sanborn*, *Steketee*, and *Mirkin*—current and former Viridian customers in Massachusetts, Connecticut, New York, and New Jersey—do not overlap with *Landau's* putative class of current and former Pennsylvania consumers. *Hembling*, by contrast, purports to bring claims on behalf of a broader class of Viridian customers in 13 states, including Pennsylvania.

Although *Sanborn*, *Steketee*, and *Mirkin* concern different parties and legal

---

1. Although Landau's claims were based on Pennsylvania law and were against Viridian PA LCC, the putative class in his Complaint was not geographically constrained. At a hearing on February 22, 2017, however,

counsel represented to the Court that the putative class in *Landau v. Viridian Energy PA LLC* is restricted to Viridian's current and former Pennsylvania customers.

claims, the underlying allegations in the consolidated complaint bear a meaningful resemblance to the allegations in Landau's Complaint. As in *Landau*, the plaintiffs in *Sanborn*, *Steketee*, and *Mirkin* argue that Viridian breached its contractual obligation to base fluctuations in variable rates on wholesale market conditions. The *Mirkin* plaintiffs have also amended their complaint to assert a breach of contract claim identical to the one that I recognized in *Landau*, namely, that Viridian's "Welcome Letter" to new customers included promises of affordable rates, that this Welcome Letter was incorporated into the contract by an integration clause, and that Viridian failed to deliver cost savings as promised. Finally, all plaintiffs allege that Viridian's marketing promises were deceptive or misleading.

In an effort to streamline litigation, Judge Underhill has imposed a common pretrial schedule on *Sanborn*, *Steketee*, and *Mirkin*.[2] Counsel in those cases have also agreed to share with counsel in *Hembling* and *Landau* any documents produced in discovery without the need for document requests. Viridian now asks that I further consolidate these cases by transferring *Landau* to Judge Underhill's docket, or, alternatively, that I stay *Landau* pending resolution of the Connecticut cases.

## II. DISCUSSION

### A. Applicability of the "First–Filed Rule"

 Viridian moves for transfer under the first-filed rule and 28 U.S.C.

§ 1404(a). Under the first-filed rule, when two courts possess the same case at the same time, "the court which first has possession of the subject must decide it." *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir. 1941) (quoting *Smith v. McIver*, 22 U.S. 532, 535, 9 Wheat. 532, 6 L.Ed. 152 (1824) (Marshall, C. J.)). "The rationale for the rule is the desire for sound judicial administration and comity among federal courts of equal stature. It is also designed to relieve a party who first brings a controversy into a court of competent jurisdiction from vexation of multiple litigations covering the same subject matter." *Synthes, Inc. v. Knapp*, 978 F.Supp.2d 450, 455 (E.D. Pa. 2013).

In application, the first-filed rule[3] easily encompasses cases involving the same parties and the same transaction. Many such cases involve intellectual property disputes, where a suit for infringement of a patent in one district is met by a declaratory judgment action brought by the alleged infringer against the holder of the patent in another district. *See, e.g., Crosley Corp. v. Westinghouse Elec. & Mfg. Co.*, 130 F.2d 474, 475–76 (3d Cir.), *cert. denied*, 317 U.S. 681, 63 S.Ct. 202, 87 L.Ed. 546 (1942). Except in such archetypal cases, the contours of the first-filed rule are harder to discern and courts in this District disagree over its scope. Some courts take a narrow view of the first-filed rule and apply it only when the parties and claims in the later-filed suit are a "mirror image" of the first. *Palagano v. NVIDIA Corp.*, No. CV 15-1248, 2015 WL 5025469, at *2 (E.D. Pa. Aug. 25, 2015) (listing cases). Others have

**2.** As of now, briefing on motions for class certification in *Sanborn*, *Steketee*, and *Mirkin* is due by mid–October, and dispositive motions must be filed by the end of November.

**3.** On one level, it almost seems a misnomer to refer to the first-filed "rule," because in practice it is applied more in the nature of an equitable doctrine that has given rise to a

wide variety of results. As described by the Third Circuit, the rule is "is not a mandate directing wooden application," *EEOC v. Univ. of Pa.*, 850 F.2d 969, 972 (3d Cir. 1988), *aff'd*, 493 U.S. 182, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990), and courts are free to depart from it when "fundamental fairness dictates," *id.* at 977.

embraced a broader, close-enough-for-government-work approach to the rule and applied it to "disputes involving *similar*, concurrent actions." *Shire U.S., Inc. v. Johnson Matthey, Inc.*, 543 F.Supp.2d 404, 407 (E.D. Pa. 2008) (emphasis added). According to proponents of the broader approach, the "substantive touchstone of the first-to-file inquiry is subject matter," rather than identity of legal claims or parties. *Id.* at 409; *see also Palagano*, 2015 WL 5025469, at *2 (listing cases that apply the broader approach).

The Third Circuit has not definitively ruled on the scope of the first-filed rule. Proponents of the mirror-image approach point to a footnote in *Grider v. Keystone Health Plan Center, Inc.*, 500 F.3d 322, 333 n.6 (3d Cir. 2007), where the Third Circuit said that the first-filed rule applied only when "the later filed case [is] . . . on all fours with the other" and "the issues . . . have such an identity that a determination in one action leaves little or nothing to be determined in the other." Courts favoring a broader interpretation of the first-filed rule dismiss the language in *Grider as mere dicta. See Synthes*, 978 F.Supp.2d at 456 (collecting cases).

There appears to be consensus that *if* the first-filed rule applies, there is a presumption that the later-filed action should be dismissed, transferred, or stayed. *Koresko v. Nationwide Life Ins. Co.*, 403 F.Supp.2d 394, 403 (E.D. Pa. 2005). But even this presumption gives way when "fundamental fairness dictates" a departure from the ordinary course.[4] *Univ. of Pa.*, 850 F.2d at 977.

Confounding the picture still further, many district courts have held that even when the rule applies, a party seeking transfer of a later-filed case must nonetheless show that the conditions of 28 U.S.C. § 1404 are satisfied. *See Thompson v. Glob. Mktg. Research Servs., Inc.*, No. CV 15-3576, 2016 WL 233702, at *3 (E.D. Pa. Jan. 20, 2016) (listing cases that apply § 1404 after finding that the first-filed rule applies).

I am persuaded that much of the disagreement in the reported cases can be reconciled by recognizing that there are two distinct scenarios where the rule has been applied. The first-filed rule started with cases like *Crosley*, where earlier- and later-filed actions involved the same parties and arose out of the same transaction, agreement, or encounter. Only later was it extended to cases that were not truly related but raised similar issues. In cases where two actions arise out of an integrated dispute, transfer, stay, or dismissal of the later-filed action should be required in the absence of exceptional circumstances. The Third Circuit's statement in *Grider*, even if *dicta*, supports that view. Such cases are genuinely related, in the technical sense, making transfer (where it is sought) an obvious remedy. As a matter of simple logic, however, the rule does not carry the same force when (1) different parties are involved, (2) the underlying dispute involves similar but not identical issues, and (3) the controlling law is from different jurisdictions. Any relationship between such cases is necessarily more at-

---

4. In *Synthes, Inc. v. Knapp*, my colleague Judge Savage noted that courts in this circuit also diverge on whether departures from the first-filed rule are commonplace. 978 F.Supp.2d at 455. *Compare, e.g., Koresko v. Nationwide Life Insurance Co.*, 403 F.Supp.2d 394, 400 (E.D. Pa. 2005) ("[D]ue consideration to the orderly administration of justice counsels in favor of ordinarily respecting the first-filed rule."), *and Southampton Sports Zone, Inc. v. ProBatter Sports, LLC*, No. 03-3185, 2003 WL 22358439, at *4 (E.D. Pa. Sept. 10, 2003) (departures from the first-filed rule are rare), *with FMC Corp. v. AMVAC Chem. Corp.*, 379 F.Supp.2d 733, 744 (E.D. Pa. 2005) (exceptions to the first-filed rule are not rare-rather, departure occurs where justice requires).

tenuated. Faced with that scenario, courts import § 1404 into the analysis, implicitly recognizing the weakness of the relationship between cases.

In my view, clarity is served by explicitly recognizing a two-tiered approach to the first-filed rule. In truly related cases, transfer to the jurisdiction with the first-filed case should be presumed. Otherwise, the existence of an earlier-filed case that is similar, but not identical, should be a relevant, but not controlling, factor to consider as part of § 1404 transfer analysis. Because the cases here are not identical, I will consider the relevance of the pending Connecticut actions as a factor under § 1404.

## B. Section 1404—Analysis

■ Under § 1404, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In applying § 1404, a court must first determine whether venue is proper in both the original district and the district to which transfer is sought. *Keating Fibre Int'l, Inc. v. Weyerhaeuser Co.*, 416 F.Supp.2d 1048, 1053 (E.D. Pa. 2006). If so, the court then weighs a variety of factors to determine whether transfer is appropriate. *Id.*

■ Normally, this multi-factor balancing inquiry requires courts to assess "both the private interests of the parties and public-interest considerations." *Atl. Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 134 S.Ct. 568, 574, 187 L.Ed.2d 487 (2013). But the existence of a valid forum selection clause alters the analysis. "When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.* at 582. Thus, where a valid forum-selection clause exists, courts may only transfer cases outside of the preselected forum where public interest factors outweigh the presumed private interests in enforcing the clause. *Id.* at 575. "Because public-interest factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.* at 577.

■ Here, Viridian's contract provides "[v]enue for any lawsuit brought to enforce any term or condition of this Agreement shall lie exclusively in the Commonwealth of Pennsylvania." MTD Ex. 4 at *2. In a reversal of typical roles, Viridian, the corporate defendant and drafter of the mandatory forum selection clause, seeks to avoid it, while Landau, the consumer plaintiff, seeks its strict enforcement. Given the existence of the clause, only public interest considerations can support transfer.

■ Courts in the Third Circuit evaluate the public interest in transfer by weighing a non-exhaustive list of factors articulated in *Jumara v. State Farm*. The *Jumara* factors are:

> the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

55 F.3d 873, 879–80 (3d Cir. 1995).

Viridian argues that there is an overwhelming public interest in transfer because moving the case to Judge Underhill's docket will facilitate coordination with *Sanborn, Steketee, Mirkin,* and *Hem-*

*bling.* According to Viridian, such coordination will conserve judicial resources by streamlining discovery and by avoiding duplicative litigation in matters that "involve completely overlapping subject matter." MTT at 8. Viridian also argues that, because the putative classes in *Hembling* and *Landau* both include Pennsylvania consumers, trying *Landau* in Pennsylvania could prejudice members of the overlapping putative classes and lead to claim-splitting. Relatedly, Viridian notes that it ultimately revised its Pennsylvania contracts, and more recent iterations of its Terms and Conditions contain a mandatory forum selection clause that requires contract disputes to be litigated in Connecticut rather than here. According to Viridian, Pennsylvania customers who are bound by the Connecticut forum selection clause will not be able to join Landau's class action if the case is brought in the Eastern District of Pennsylvania; Viridian therefore asks that this case be transferred to facilitate Landau's representation of a consolidated class of Pennsylvania plaintiffs. Finally, Viridian maintains that transfer serves the public interest in comity between federal courts because it avoids the risk of inconsistent rulings.[5] In sum, as to the *Jumara* public interest factors, Viridian's argument for transfer is based on "practical considerations that could make the trial easy, expeditious, or inexpensive" in the District of Connecticut.[6]

Viridian's argument that transfer will conserve judicial resources is not without

force, but it exaggerates the extent to which *Landau* overlaps with the Connecticut cases and therefore overstates the benefits of transfer. While all five cases concern similar allegations, the applicable law varies from case to case. Differences in controlling law weigh against transfer because I have already invested considerable time in evaluating Landau's claims under Pennsylvania contract law and the UTPCPL, while Judge Underhill has not yet been required to undertake a similar inquiry. The duplication of legal analysis that would necessarily attend a transfer of this case offsets, at least in part, any potential efficiency gains from consolidation.

Further undermining Viridian's case for transfer, there appear to be important factual differences between *Landau* on the one hand, and *Sanborn, Steketee,* and *Mirkin* on the other. Viridian now claims that the contracts in *Landau* and the Connecticut cases are materially identical but its current posture is flatly contradicted by its earlier position. When arguing in support of its Motion to Strike, Viridian described its various state contracts as containing "numerous material differences among the variable rate terms." MTS at 14. Specifically, Viridian stressed distinctions between the contract in *Landau* and the contract in *Steketee:* while the former promised that variable rates would fluctuate "based on wholesale market conditions," the latter described "market conditions" as just one of "several factors" that would impact rates, which could also vary

---

5. Viridian also complains that having to try cases in Pennsylvania and Connecticut would subject it to the "considerable burdens" of duplicative discovery requests and motion practice. MTT at 13. As already noted, such considerations of private convenience are barred under *Atlantic Marine,* which presumes that a forum selection clause manifests the intent of the parties to try cases in the preselected forum. This approach is particularly apt here. Viridian drafted the forum

selection clause that it now seeks to escape; any harm that Viridian suffers from having to defend itself in two states is therefore self-inflicted.

6. Landau separately argues that transfer is inappropriate because this case could not have been brought in Connecticut because of the forum selection clause. This argument is patently lacking in merit under *Atlantic Marine,* 134 S.Ct. at 575.

due to "operation costs, and other factors." *Id.* Given the central importance of precise contract language to any breach of contract analysis, these differences undermine Viridian's argument that *Landau* is on all fours with the Connecticut cases and that transfer is therefore necessary to avoid duplicative litigation.

Viridian's claim that transfer is necessary to coordinate discovery between *Landau* and the Connecticut cases is similarly unpersuasive. That argument is belied by the parties' agreement to share with counsel in *Hembling* and *Landau* all documents produced in *Sanborn, Steketee,* and *Mirkin.* With this agreement in place, I fail to see how trying *Landau* in the Eastern District of Pennsylvania will force Viridian "to duplicate efforts with respect to written discovery [and] the production of thousands of documents." MTT at 13.

Moreover, I am unconvinced that the specter of overlapping classes in *Hembling* and *Landau* tips the scales in favor of transfer. During oral argument, Viridian implied that it would not oppose attempts by counsel in *Hembling* to bring claims on behalf of Pennsylvania consumers. In rebuttal, Landau urged that I place no weight on these seeming assurances from Viridian. He noted that *Hembling* has no representative plaintiff from Pennsylvania and does not involve any Pennsylvania state law claims. Landau further maintains that Viridian is likely to oppose a motion for class certification in *Hembling,* notwithstanding its current assurances before the court. Given Viridian's demonstrated willingness to reverse itself to advance tactical litigation objectives, I tend to agree. The possibility that *Hembling* and *Landau* might feature overlapping classes does not mandate transfer.

Nor does Viridian's use of a Connecticut forum selection clause in its more recent Pennsylvania contracts. While Viridian argues that these Connecticut forum selec-

tion clauses will balkanize Landau's putative class by requiring some Pennsylvania consumers to try breach of contract claims in Connecticut, it is unclear how many of Viridian's Pennsylvania customers are subject to the newer version of its contract and it is therefore impossible to say how much havoc the Connecticut forum selection clauses might wreak on Landau's attempt to certify a class. Furthermore, as Viridian strenuously argues here, forum selection clauses are not iron-clad and may give way where public interest factors overwhelmingly favor their abrogation. Thus, even if *Landau* remains in this District, it might still be possible to certify a consolidated class of Pennsylvania consumers, notwithstanding a forum selection clause that directs some those consumers to bring claims in Connecticut.

Viridian's last argument in favor of transfer is that placing *Landau* on Judge Underhill's docket will avoid conflicting judgments between courts of equal rank. I see at least two problems with this claim. First, as noted above, the contract terms and applicable law in *Landau* differ from the contract terms and applicable law in the Connecticut cases. In light of these differences, Viridian's presumption that a consistent outcome across cases is necessarily required does not withstand scrutiny. Second, I question whether the growing practice of aggregating cases before a single judge is always wise. The law develops through the exchange of ideas. No single case necessarily embodies the complexities or nuances of subjects as vast as the delivery of electricity to consumers. No one set of lawyers necessarily advances all of the relevant issues courts should consider. And, as exemplified by the UTPCPL claims in this case and the scope of the first-filed rule, not every jurist comes to the same conclusion on the same question of law, even within a single district. *Landau,* 223 F.Supp.3d at 411. The law bene-

fits from this intellectual give-and-take. Considerations of judicial efficiency and predictability are important, but the mere "possibility of inconsistent results," MTT at 8, does not compel transfer—especially with different contracts and different controlling law.

Finally, at least one of the other *Jumara* public interest factors weighs against transfer: "the local interest in deciding local controversies at home." As Landau notes, there is a growing recognition among courts in this District that Pennsylvania has a strong local interest in trying suits brought by its residents against energy service companies operating inside its borders. In *Silvis v. Ambit Energy, L.P.*, one court found that this local interest grew out of Pennsylvania's traditional role as a regulator of retail electricity markets:

> Pennsylvania has historically regulated the supply of energy to its residents, and continues to do so actively in important ways even after partially deregulating the industry in 1996. For example, the Pennsylvania Public Utility Commission ("PUC") mandates licensure for private energy suppliers like Defendants [ (and like Viridian) ] who wish to service the Commonwealth's market[.]

90 F.Supp.3d 393, 399 (E.D. Pa. 2015) (Robreno, J.). The court in *Kantor v. Hiko Energy, LLC* struck a similar note, while also finding that the state's local interest in trying UTPCPL claims against companies like Viridian was especially strong since the enactment of the UTPCPL "exemplified ... Pennsylvania's interest in protecting its citizens from unfair trade practices." No. CIV.A. 14-5585, 2015 WL 4770778, at *5 (E.D. Pa. Aug. 13, 2015) (Savage, J.).[7]

*Silvis* and *Kantor* were well-reasoned decisions and persuade me that Pennsylvania has an important interest in the rights of Pennsylvania electricity consumers, especially where the contracts at issue were formed here and the alleged misrepresentations occurred here as well. Accordingly, venue in a district court sitting in Pennsylvania is appropriate.

The combination of Pennsylvania's local interest in trying *Landau* and the presumed private interests of the parties in trying this case in the preselected forum outweighs the public interest in favor of transfer. Viridian's Motion to Transfer will be denied.

### C. Stay

If I deem transfer improper, Viridian asks that I stay this case pending resolution in the Connecticut cases. "The power to stay is incidental to the power inherent in every court to dispose of cases so as to promote their fair and efficient adjudication." *United States v. Breyer*, 41 F.3d 884, 893 (3d Cir. 1994). A stay, however, "is an extraordinary measure," and demands "compelling reasons for its issuance." *Id.* For the reasons discussed below, Viridian's Motion to Stay will be granted.

Two factors strongly support staying this case. First is the possibility of overlapping classes in *Landau* and *Hembling*. While this consideration did not tip the scales in favor of transfer, it nonetheless weighs heavily in favor of a stay. The complaints in both *Hembling* and *Landau* allege that Viridian breached its contractual obligation to base changes in its variable rates on wholesale market conditions. However, after examining Landau's Complaint, I found that he failed to plead factual allegations supporting this particular breach of contract theory. *Landau*, 223 F.Supp.3d at 408-09. Specifically, I noted

---

7. Although state authorities have not launched a public inquiry into Viridian, as was the case in *Kantor*, Pennsylvania's interest remains strong.

that Landau had never actually alleged that Viridian's variable rates were out of sync with *wholesale* electricity prices—only that these rates were *higher* than the *retail* rates charged by the local utility company. *Id.* The complaint in *Hembling* (like the consolidated complaint in the other Connecticut cases) does not suffer from this pleading defect. Rather, it clearly alleges that Viridian's rates rose as wholesale prices remained steady or fell.

That Viridian failed to base its variable rates on wholesale market conditions appears to be one of the stronger allegations against the company; it also appears to be among the claims that are most likely to support a class action. Landau's failure to state a claim based on this breach of contract theory may therefore harm Pennsylvania consumers if his case is permitted to move forward. If, on the other hand, *Landau* is stayed until motions for class certification are resolved in *Hembling*, and if the plaintiffs in *Hembling* succeed in certifying a class of Viridian's Pennsylvania customers, then Pennsylvania consumers may still seek relief based on the breach of contract theory that Landau effectively forfeited through sloppy pleading. The interests of Pennsylvania consumers therefore support issuance of a stay.

Sharp practices by Landau's counsel further weigh in favor of a stay. Under the Eastern District of Pennsylvania's Local Rules, attorneys can mark a case as "related" when it "relates to property included in another suit, or involves the same issue of fact or grows out of the same transaction as another suit, or involve the validity or infringement of a patent involved in another suit." Local Rule of Civil Procedure 40.1(b)(3). When a case is marked as related, instead of being randomly assigned, it is given to the judge who presided over the earlier-filed suit.

Attorneys mark cases as "related" on a "Civil Cover Sheet" and a "Designation Form," both of which are submitted to the Clerk of Court along with the Complaint. The Designation Form further requires that attorneys specify why a given case is related to a previously filed case. This is done by checking "yes" or "no" next to one of four grounds for "relatedness," each of which correspond to the Local Rules. Lest there be any doubt, above those "yes" or "no" boxes, the Designation Form explains that "[c]ivil cases are deemed related when yes is answered to any of the following."

Both the Local Rules and the Designation Form make it abundantly clear when cases are related. Nevertheless, Landau's counsel marked this case as related to *Sobiech v. U.S. Gas & Electric, Inc.*, No. 14–cv–4464 (E.D. Pa. filed July 25, 2014), a case that does not concern the same property or transaction as the present action. Underscoring the baselessness of this action, counsel checked the "no" box next to each of the grounds for relatedness specified on the Designation Form.[8]

Because there was no apparent reason to mark *Landau* as related to *Sobiech*, counsel's actions raise a compelling inference of judge-shopping. Supporting this inference, Landau's Response to Viridian's Motion to Dismiss relied heavily on my (inapposite) opinion denying a motion to dismiss in *Sobiech. See, e.g.*, Resp. to MTD at 3 ("Your Honorable Court recently faced a similar set of facts and denied Defendant's motion to dismiss in *Sobiech*."). Moreover, when given the chance to explain themselves, neither of Landau's attorneys was able to offer any reason for marking *Landau* and *Sobiech* as related, and simply apologized for having made a "mistake."

---

**8.** Regrettably, the Clerk's office failed to enforce the Local Rule, and I did not catch its oversight until after making a series of important rulings.

The practice of judge-shopping raises serious questions of professional ethics and undermines trust in the court's impartiality. Some consequence should follow. Had I not already invested substantial time and effort in this matter, I would have sent the case back for reassignment. But judicial economy would be undermined by late reassignment. Instead, I find that staying this matter imposes an appropriate penalty. The similar allegations in *Landau* and the four Connecticut cases mean that some common questions of law and fact are likely to arise in each action, particularly on motions for class certification. Judge Underhill's decisions on those motions will not necessarily control the outcome in *Landau*, but they will undoubtedly inform my approach. Therefore, by staying this case and deferring to Judge Underhill's initial handling of the Connecticut cases, I will at least partially attenuate any taint, and erode whatever advantage Landau's counsel hoped to gain by having me preside over the case.

Finally, a stay is appropriate here because the burdens it would impose on Landau are minimal. Counsel in *Sanborn*, *Steketee*, and *Mirkin* have agreed to file motions for class certification by mid-October and *Hembling's* stay will be lifted pending resolution of those motions. During the finite duration of this stay, Landau will have access to documents produced through discovery in the Connecticut cases and will therefore have an opportunity to develop his case. Both Landau and Viridian are further encouraged to use this stay to determine how many Pennsylvania consumers are subject to Pennsylvania forum selection clauses, and how many are subject to Connecticut forum selection clauses. Resolution of this factual question will streamline litigation when this stay is lifted.

### III. CONCLUSION

Based on the forum selection clause, differences in the underlying facts and applicable law in *Landau* and the Connecticut cases, and Pennsylvania's strong interest in trying UTPCPL claims against energy services companies, I find that transfer is improper in this case. I am convinced however, that equitable considerations warrant a stay. Viridian's Motions to Transfer will be denied, but its Motion to Stay will be granted. An appropriate order follows.