Paul S. Diamond, District Judge.
This is the seventh Private Securities Litigation Reform Act suit filed in different districts against Teva Pharmaceutical Industries Ltd., and its directors and officers, alleging that Defendants misled investors about Teva's financial condition. (Compl., Doc. No. 1.) Defendants have moved to transfer this case to the District of Connecticut under either the first-filed rule or 28 U.S.C. § 1404(a). (Defs.' Mot. Transfer, Doc. No. 30.) Because transfer is appropriate on both grounds, I will grant Defendants' Motion.
I. PROCEDURAL HISTORY
A. The Earlier-Filed Complaints and the Consolidated Action
Between November 6, 2016 and August 3, 2017, three private securities class actions were filed in California and Connecticut against Teva and its officers and employees. (Defs.' Mot. Transfer 3-6); see Compl., Galmi v. Teva Pharm. Indus. Ltd., Civ. No. 16-08259, Doc. No. 1 (C.D. Cal., Nov. 6, 2016); Compl., Leone v. Teva Pharm. Indus. Ltd., Civ. No. 16-09545, Doc. No. 1 (C.D. Cal. Dec. 27, 2016); Compl., OZ ELS Master Fund. Ltd. v. Teva Pharm. Indus. Ltd., Civ. No. 17-558, Doc. No. 1 (D. Conn. Aug. 3, 2017). A derivative action was also brought in Ohio against Teva and its officers, alternatively alleging class action claims. Compl., Hullemeir v. Teva Parm. Indus. Ltd., Civ. No. 17-485, Doc. No. 1 (S.D. Ohio July 17, 2017).
On April 3, 2017, Judge Hatter of the United States District Court for the Central District of California consolidated Galmi and Leone because both matters included claims under §§ 10(b) and 20(a) of the Federal Securities Exchange Act and stemmed from Defendants' allegedly misleading public statements about price-fixing in the pharmaceutical industry. Order, Galmi, Doc. No. 74 (C.D. Cal. Apr. 3, 2017). Judge Hatter then transferred the consolidated matter to the District of Connecticut, where a civil antitrust case brought by various states against Teva and other generic-drug companies was pending. Id. Judge Underhill of the United States District Court for the District of Connecticut appointed the Ontario Teachers' Pension Plan Board as lead plaintiff in the Connecticut consolidated action, and the Board filed an amended complaint. Order, Ontario Teachers' Pension Plan Board v. Teva Pharm. Indus. Ltd., Civ. No. 17-558, Doc. No. 124 (D. Conn. July 11, 2017); Am.
*419 Compl., Ontario Teachers' Pension Plan Board, Doc. No. 141 (D. Conn. Sept. 11, 2017).
On November 17, 2017, Judge Dlott of the United States District Court for the Southern District of Ohio transferred Hullemeir to the District of Connecticut under the first-filed rule because of substantial overlap with the Ontario Teachers' consolidated action. Order, Hullemeier, Doc. No. 17 (S.D. Ohio Nov. 17, 2017) (overlap in defendants, allegations regarding misrepresentations and price-fixing, and proposed class favored transfer). Judge Underhill stayed Hullemeir and OZ ELS pending resolution of motions to dismiss filed in Ontario Teachers' . Order, Huellemeier, Doc. No. 37 (D. Conn. Feb. 12, 2018); Minute Entry, OZ ELS, Doc. No. 19 (D. Conn. Aug. 30, 2017).
On November 1, 2017, two nearly identical securities actions were consolidated before me. Order, Grodko, Doc. No. 16, Civ. No. 17-3743. On April 10, 2018, I transferred the consolidated action to the District of Connecticut under the first-filed rule, or, in the alternative, under 28 U.S.C. § 1404(a) because of substantial overlap with the Ontario Teachers' consolidated action. Order, Grodko, Doc. No. 37, Civ. No. 17-3743; Order, Baker, Doc. No. 17, Civ. No. 17-3902.
B. The Instant Complaint
On August 3, 2018, The Phoenix Insurance Company Ltd., The Phoenix Pension Ltd., Excellence Gemel & Hishtalmut Ltd., Excellence Kesem ETNS, and Excellence Mutual Funds filed suit against Teva Pharmaceutical Industries Ltd., and certain current and former directors and officers under the Securities Exchange Act of 1934, the Securities Act of 1933, the Pennsylvania Securities Act of 1972 (the "PSA"), and the Israel Securities Law of 1968. (Compl. 1, Doc. No. 1.)
Defendants have moved to transfer the instant action to the District of Connecticut pursuant to the first-filed rule or under 28 U.S.C. § 1404(a). (Defs.' Mot. Transfer.) The matter has been fully briefed. (Doc. Nos. 30, 36, 37.)
II. LEGAL STANDARDS
A. The First-Filed Rule
As explained by the Third Circuit:
The first-filed rule encourages sound judicial administration and promotes comity among federal courts of equal rank. It gives courts 'the power' to enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court.
E.E.O.C. v. Univ. of Pa., 850 F.2d 969, 971 (3d Cir. 1988) ; accord Crosley Corp. v. Hazeltine Corp., 122 F.2d 925, 929 (3d Cir. 1941) ("In all cases of concurrent jurisdiction, the court which first has possession of the subject must decide it." (quoting Smith v. McIver, 22 U.S. 532, 535, 9 Wheat. 532, 6 L.Ed. 152 (1824) )). The rule "permits courts to consolidate similar cases by transferring later-filed cases for consolidation with the first-filed case." Palagano v. NVIDIA Corp., No. 15-1248, 2015 WL 5025469, at *1 (E.D. Pa. Aug. 25, 2015) ; see also Chavez v. Dole Food Co., Inc., 836 F.3d 205, 217 & n.48 (3d Cir. 2016) (en banc) (citing 15 Charles Alan Wright et al., Fed. Prac. & Proc. § 3854 & n.12 at 339-43 (4th ed. 2013)).
Although courts differ with respect to the degree of similarity required, a "flexible approach ... more fully meet[s] the purposes of the first-filed rule." Law Sch. Admission Council, Inc. v. Tatro, 153 F.Supp.3d 714, 724 (E.D. Pa. 2015) ; see also Chavez, 836 F.3d at 216 ("[T]he first-filed rule is 'grounded on equitable principles' and requires district *420 court judges to 'fashion[ ] a flexible response to the issue of concurrent jurisdiction.' " (second alteration in original) (footnotes omitted) (quoting E.E.O.C., 850 F.2d at 977 )). Accordingly, in adopting this "more flexible approach," courts in this Circuit have repeatedly held that "the rule applies to cases that are substantially similar." Palagano, 2015 WL 5025469, at *2 (collecting cases). With this greater flexibility, "[t]he applicability of the first-filed rule is not limited to mirror image cases where the parties and the issues perfectly align. Rather, the principles underlying the rule support its application where the subject matter of the later filed case substantially overlaps with that of the earlier one." Villari Brandes & Kline, P.C. v. Plainfield Specialty Holdings II, Inc., No. 09-2552, 2009 WL 1845236, at *6 (E.D. Pa. June 26, 2009). The "substantive touchstone of the first-to-file inquiry is subject matter." Id. (quoting Shire U.S., Inc. v. Johnson Matthey, Inc., 543 F.Supp.2d 404, 409 (E.D. Pa. 2008) ).
"[R]are or extraordinary circumstances, inequitable conduct, bad faith, or forum shopping" are appropriate reasons to retain jurisdiction of a later-filed action. E.E.O.C., 850 F.2d at 976.
B. Transfer
For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.
28 U.S.C. § 1404(a).
Congress enacted § 1404(a) "to prevent the waste 'of time, energy, and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.' " Van Dusen v. Barrack, 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) (quoting Cont'l Grain Co. v. Barge FBL-585, 364 U.S. 19, 26-27, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960) ). "A motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance a number of case-specific factors." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). Although "there is no definitive formula or list of ... factors to consider, courts have considered many variants of the private and public interests protected by the language of § 1404(a)." Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995) (citation omitted).
The Jumara Court set out private and public interests that I may consider:
The private interests have included: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).
The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.
Id. at 879-80 (citations omitted).
III. DISCUSSION
Defendants seek transfer to the District of Connecticut under the first-filed rule or *421 § 1404(a). (Defs.' Mot. Transfer.) Plaintiffs argue that the first-filed rule is inapplicable and transfer is inappropriate under § 1404(a). (Pls.' Opp'n. Mem., Doc. No. 36.)
A. The First-Filed Rule
Identifying the First-Filed Case
Plaintiffs do not dispute that Ontario Teachers' was filed before this action. Instead, Plaintiffs argue that the first-filed rule is inapplicable because this action is not "truly duplicative" of Ontario Teachers' . (Id. at 12.) I disagree.
Similarity with the Connecticut Consolidated Action
Substantial overlap in subject matter between two actions is significant under the first-filed rule. E.E.O.C. v. Univ. of Pa., 850 F.2d 969, 971 (3d Cir. 1988) ("[T]he court which first has possession of the subject must decide it."); see also Ivy-Dry, Inc. v. Zanfel Laboratories, Inc., Civ. No. 08-4942, 2009 WL 1851028, at *5 (D.N.J. June 24, 2009) ("[A] plain reading of the Third Circuit's opinion in EEOC strongly suggests that whether the cases share subject matter is more important than the absolute identity of the parties."). Common claims, allegations, and parties in this action and the Connecticut action underscore shared subject matter.
Ontario Teachers' is based on "material misstatements and omissions about Teva's U.S. generic drugs business, its financial performance, and in particular its participation in an anticompetitive collusive scheme to manipulate the market for generic drugs," which damaged investors once the inflated price of Teva securities fell. Am. Compl. ¶ 4, Ontario Teachers' Pension Plan Board, No. 17-cv-558, Doc. No. 141 (Sept. 11, 2017). Here, Plaintiffs allege that Defendants made "material misstatements and omissions about: (i) Teva's U.S. generic drugs business, including its financial performance and projections, its participation in an anticompetitive collusive scheme to manipulate the market for generic drugs, the source and sustainability of Teva's revenues, profits and growth, [and] the rate of price erosion on Teva's generic drugs." (Compl. ¶ 4, Doc. No. 1.)
Although this action encompasses a period several months longer than that covered by Ontario Teachers, Ontario Teachers encompasses most of the defendants and allegations present in this action. In Ontario Teachers , the lead plaintiff seeks to represent the class of persons and entities that acquired Teva American Depositary or common stock between February 6, 2014 and August 3, 2017. Am. Compl. ¶ 28, Ontario Teachers' Pension Plan Board, Doc. No. 141. Here, the Complaint covers a period from October 30, 2013 to February 8, 2018. (Compl. 1.) Nearly all the Defendants in the instant action are or were defendants in the Ontario Teachers ' consolidated action. Compare (Compl. ¶¶ 44-45, 47-53) with Am. Compl. ¶¶ 24-31, Ontario Teachers' Pension Plan Board, Doc. No. 226, and Consol. Compl. ¶¶ 12-39, Ontario Teachers' Pension Plan Board, Doc. No. 129. Defendant Michael McClellan is the only Defendant not named in Ontario Teachers' . (Compl. ¶ 56.)
In addition, the claims in both actions are nearly identical. The Ontario Teachers' lead plaintiff brings claims under: (1) § 10(b) of the Exchange Act and Rule 10b-5; (2) § 20(a) of the Exchange Act; (3) §§ 11, 12(a)(2), and 15 of the Securities Act of 1933; and (4) the Israel Securities Law of 1968. Am. Compl. ¶¶ 341-47, 397-442, Ontario Teachers' Pension Plan Board, Doc. No. 226. The claim under the Israel Securities Law of 1968 was dismissed from the Ontario Teachers' action. Compare Sec. Am. Compl., Ontario Teachers' Pension Plan Board, Doc. No. 226 with *422 Am. Compl. ¶ 1076-84, Ontario Teachers' Pension Plan Board, Doc. No. 141. Plaintiffs here bring claims under: (1) § 10(b) of the Exchange Act and Rule 10b-5; (2) § 20(a) of the Exchange Act; (3) §§ 11, 12(a)(2), and 15 of the Securities Act of 1933; (4) the Israel Securities Law of 1968; and (5) §§ 1-402(c) and 1-501(c) of the Pennsylvania Securities Act. (Compl. ¶¶ 771-804, 826-52.)
Moreover, Plaintiffs in both cases rely upon nearly identical theories of liability. In Ontario Teachers' , Plaintiffs alleged that Teva utilized a "Price-Hike Strategy" to "systematically raise generic drug prices," leading to over $ 2.3 billion in "Inflated Profit." Am. Compl. ¶ 2, Ontario Teachers' Pension Plan Board, Doc. No. 226. Here, Plaintiffs allege that Teva engaged in a "Price-Hike Strategy" to "increase generic drug prices," leading to "approximately $ 2.6 billion" in "Inflated Profit." (Compl. ¶¶ 6-7.)
Given this substantial overlap in subject-matter, transfer under the first-filed rule would prevent inconsistent rulings and duplication of judicial effort. See Catanese, 774 F. Supp. 2d at 688 ; see also E.E.O.C. v. Univ. of Pa., 850 F.2d 969, 971 (3d Cir. 1988).
Rare or Extraordinary Circumstances
Finally, nothing suggests that I should refrain from applying the first-filed rule. Forum shopping is not a concern: Defendants filed none of the actions at issue here. (Defs.' Mot. Transfer 18-19, Doc. No. 30-2); see also E.E.O.C, 850 F.2d at 978 (the forum shopping exception applies only when a plaintiff shows that a defendant in the second action filed the first action to avoid the second forum); FMC Corp. v. AMVAC Chem. Corp., 379 F.Supp.2d 733, 745 (E.D. Pa. 2005). Indeed, Teva sought transfer of the originally filed action from California to this District. Galmi v. Teva Pharm. Indus. Ltd., Civ. No. 16-08259, (C.D. Cal. Apr. 3, 2017). The California court chose, however, to transfer the action to the District of Connecticut. See id. Moreover, this suit has not progressed beyond the stage reached in Ontario Teachers' , nor has there been any showing of bad faith. (See Defs.' Mot. Transfer 18-19); Ontario Teachers' Pension Plan Board, et al, No. 17-cv-558, (D. Conn. July 11, 2017); see also E.E.O.C, 850 F.2d at 976.
In sum, transfer is proper under the first-filed rule.
B. Section 1404(a)
In the alternative, I conclude that the Jumara factors weigh strongly in favor of transfer under § 1404(a).
Jurisdiction over Plaintiffs' Pennsylvania Claims
Plaintiffs argue that a "real question" exists as to whether the District of Connecticut will dismiss Plaintiffs' Pennsylvania law claims because "transferring [this case] to the same district as the Ontario Teachers' action could bring it within SLUSA's definition of a 'covered class action.' " (Pls.' Opp'n. Mem. 4.)
Section 1404(a) authorizes transfer "if the plaintiff had an 'unqualified right' to bring the action in the transferee forum at the time of the commencement of the action." Shutte v. Armco Steel Corp., 431 F.2d 22, 24 (3d Cir. 1970). So long as the claim "might have been brought" in the transferee court, transfer is authorized. 28 U.S.C. § 1404(a). Plaintiffs do not suggest that their Pennsylvania law claims could not have been brought in Connecticut. Rather, Plaintiffs argue that the transferee court may dismiss Plaintiffs' Pennsylvania claims after determining that they are pre-empted by SLUSA. See 15 U.S.C. § 78bb(f)(1), et seq. (barring pursuit of certain state law claims in actions covered by SLUSA). Because SLUSA pre-emption *423 occurs only after a post-filing decision by the transferee court, it is irrelevant to § 1404(a) analysis. See Hound Partners Offshore Fund, LP v. Valeant Pharm. Int'l, Inc., Civ. No. 18-76, 2018 WL 1940437, at *4 (S.D.N.Y. Apr. 24, 2018) ("Even if the state law claims will almost certainly be dismissed after this case is coordinated with the other New Jersey actions under SLUSA, at the time of commencement of this lawsuit, there would have been subject matter jurisdiction over all of the claims in the District of New Jersey if the lawsuit had originally been filed there.").
Accordingly, the threat of SLUSA pre-emption does not bar transfer of Plaintiffs' case and I must proceed to weighing the Jumara factors.
The Parties' Forum Preferences
Plaintiffs argue that "paramount consideration" should be given to a Plaintiff's choice of venue. (Pls.' Opp'n. Mem. 7); see also Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970). A plaintiff's choice of forum is not dispositive, however. Samuels v. Medytox Sols., Inc., Civ. No. 13-7212, 2014 WL 4441943, at *8 (D.N.J. Sept. 8, 2014).
Plaintiff's choice of forum "is given less weight" when the chosen forum is not "its state of residence." Weber v. Basic Comfort Inc., 155 F.Supp.2d 283, 285 (E.D. Pa. 2001) ; see also Lony v. E.I. Du Pont de Nemours & Co., 886 F.2d 628, 633 (3d Cir. 1989). Plaintiffs here are subsidiaries of a "financial services conglomerate headquartered in Israel." (Compl. ¶ 43.) I thus will not defer to Plaintiff's choice of forum.
Moreover, "the existence of a related action in another district is a sound reason for favoring transfer when the venue is proper there, even though the transfer conflicts with the plaintiff's choice of forum." Villari Brandes & Kline, P.C. v. Plainfield Specialty Holdings II, Inc., Civ. No. 09-2552, 2009 WL 1845236, at *5 (E.D. Pa. June 26, 2009). Although Defendants may have initially sought transfer of Galmi and Leone to this District, the situation has changed, given the consolidated action's progress in the District of Connecticut. Compare Order, Galmi v. Teva Pharm. Indus. Ltd., Civ. No. 16-08259, Doc. No. 74 (C.D. Cal. Apr. 3, 2017) with (Defs.' Mot. Transfer 22.) Defendants' preference to litigate substantially similar claims in the same district is thus entirely reasonable.
In sum, the venue of the consolidated Ontario Teachers' action favors transfer to the District of Connecticut.
Whether the Claims Arose Elsewhere
This factor does not favor transfer. When a plaintiff's cause of action "arises from strategic policy decisions of a defendant corporation, the defendant's headquarters can be considered the place where" the claims arose. Palagano v. NVIDIA Corp., Civ. No. 15-1248, 2015 WL 5025469 at *5 (E.D. Pa. Aug. 25, 2015). Here, Teva's North American subsidiary headquarters are in this District. (See Compl. ¶¶ 44-45; Defs.' Mot. Transfer 4.) Accordingly, Plaintiffs' claims arose in this district.
The Parties' Convenience
Plaintiffs argue that this District would be the most convenient forum because Teva's North American subsidiary is headquartered here. If the instant case were the first-filed action, Plaintiffs might be correct. Because, however, this is the seventh action filed against Teva asserting nearly identical claims-six of which are pending in the District of Connecticut-this District is clearly not the most convenient. Rather, the record suggests strongly that transfer would promote convenience. As Plaintiffs acknowledge, Defendants will necessarily assume the vast bulk of the discovery burden. (Pls.' Opp'n. Mem. 9-10.
*424 ); see also In re Glob. Cash Access Holdings Inc. Sec. Litig., Civ. No. 08-3516, 2008 WL 4344531, at *4 (S.D.N.Y. Sept. 18, 2008) (key witnesses in securities class actions are often officers and employees of issuer defendants); Blass v. Capital Int'l Sec. Grp., Civ. No. 99-5738, 2001 WL 301137, at *6 (E.D.N.Y. March 23, 2001) ("Securities fraud litigation almost invariably involves production and review of a vast number of documents, almost all of which will be in the defendants' possession."); In re Nematron Corp. Sec. Litig., 30 F.Supp.2d 397, 402 (S.D.N.Y. 1998) ("It is well known that trials in securities class actions focus almost entirely on the defendants' conduct."). The burden on Plaintiffs would thus be comparatively light. Given Defendants' discovery burden, however, litigating "identical actions" in two different districts "would inevitably include duplication of a large amount of discovery and documentary evidence." Catanese v. Unilever, 774 F.Supp.2d 684, 690 (D.N.J. 2011).
In sum, this factor favors transfer.
The Convenience of the Witnesses
Plaintiffs argue that three non-party witnesses may not be subject to compulsory process if this action is transferred to the District of Connecticut. (Pls.' Opp'n. Mem. 9-10.) The presence of non-party witnesses in this District would generally weigh against transfer. Because, however, Plaintiff has provided no information regarding the extent of non-party witnesses who may be called in this case, I am unable to determine if this District is in fact the most convenient forum for the majority of witnesses. See Bartolacci v. Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints, 476 F.Supp. 381, 383 (E.D. Pa. 1979). Indeed, the Galmi Court transferred the case to Connecticut rather than this District because all non-party witnesses were located in either Connecticut or Washington D.C. Galmi v. Teva Pharm. Indus. Ltd., Civ. No. 16-08259, Doc. No. 74 at 4 (C.D. Cal. Apr. 3, 2017).
In these circumstances, this factor does not weigh against transfer.
The Location of the Books and Records
Plaintiffs argue that because Teva's North American headquarters is in this District, many discoverable documents and records are also here. (Pls.' Opp'n. Mem. 10.) Yet, Defendants have not indicated that discovery materials would be less available if the matter were transferred. Plainly, given the ubiquity of electronically stored documents, this factor is neutral. See Panitch v. Quaker Oats Co., Civ. No. 16-4586, 2017 WL 1333285, at *7 (E.D. Pa. Apr. 5, 2017) ("[T]he technological advances of recent years have significantly reduced the weight of this factor in the balance of convenience analysis.").
Public Interest
Avoiding duplicative litigation furthers judicial and lawyer efficiency, as well as consistency of results. "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." Cont'l Grain Co. v. Barge FBL-585, 364 U.S. 19, 26, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960) ; see also Goggins v. Alliance Capital Management, L.P., 279 F.Supp.2d 228, 234-35 (S.D.N.Y. 2003).
Accordingly, this factor weighs in favor of transfer.
In sum, Defendants have shown that the private and public Jumara factors weigh in favor of transfer under § 1404(a).
IV. CONCLUSION
For the foregoing reasons, I will grant Defendants' Motion and transfer this matter *425 to the District of Connecticut under the first-filed rule; in the alternative, I will order transfer under 28 U.S.C. § 1404(a).
AND NOW , this 22nd day of February, 2019, upon consideration of Defendants' Motion to Transfer (Doc. No. 30), Plaintiffs' Repsonse (Doc. No. 36), and Defendants' Reply (Doc. No. 37), it is hereby ORDERED that Defendants' Motion (Doc. No. 30) is GRANTED . The CLERK OF COURT shall TRANSFER this case to the United States District Court of Connecticut, and shall CLOSE this case.
AND IT IS SO ORDERED.